ODECO, INC., et al., Plaintiffs-Appellees,

v.

AVONDALE SHIPYARDS, INC.,
Defendant-Appellant.

No. 80–3534.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Dec. 11, 1981.

Rehearing and Rehearing En Banc
Denied Jan. 8, 1982.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert B. Acomb, Jr., New Orleans, La., for Avondale Shipyards, Inc.

Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for plaintiffs-appellees.

Frances Emmett, J. Frederick Kessenich, New Orleans, La., for Northbrook Ins. Co.

George A. Frilot, III, New Orleans, La., for ODECO, Inc.

Before MARKEY[**], Chief Judge, and GEE and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

The D/B MARGARET, a submersible drilling barge owned by ODECO, Inc., was one of the victims of Hurricane Eloise which ravaged the Gulf of Mexico in September of 1975. After temporary corrective measures were performed at sea, the MARGARET was towed up the Mississippi River to Avondale Shipyards for permanent repairs. Shortly after arriving at the Avondale dock, the MARGARET sank to the river bottom and, a few days later, collapsed into ruin. The ensuing suit for damages was bifurcated, and a bench trial on liability resulted in judgment against Avondale.[1] We affirm.

### Facts

The MARGARET was a stationary drilling barge platform with twin lower hulls, 300 feet in length, trussed together to form a base for a drilling deck, quarters, galley, and typical drilling rig equipment and appurtenances. After the hurricane wreaked substantial damage upon this 18 year old rig, temporary repairs were made at sea. The damage was surveyed by representatives of ODECO and Avondale, and it was determined to tow the rig to Avondale's shipyard for overhaul. The MARGARET was towed by tugs from its position in the Gulf of Mexico up the Mississippi, encountering seas running four to six feet. To traverse under the Huey P. Long bridge, it was necessary to ballast and submerge the bow an estimated 13 feet. Avondale shipyards was reached without event.

On arrival at the shipyard, the MARGARET was moored with steel cables to a wet dock and work began, pursuant to an oral arrangement and written specifications prepared by Avondale's officers. Two elements of the work to be done by Avondale employees included clearing the hulls of gas ("gas-freeing") and water ("stripping"). ODECO employees remained on the upper levels of the MARGARET effecting minor repairs while Avondale personnel removed all but one of the manhole covers on the lower hulls. After mooring, and as the repairs got underway, the freeboard on the barge read as follows: port forward—plus 5 to 6 inches; starboard forward—plus 3 to 4 inches; port aft—plus 10 to 12 inches; and starboard aft—minus 1 to 4 inches.

The MARGARET was moored at 3:00 a.m. on October 8, 1975, and sank 26 hours later. During the first hours of repairs, ODECO employees voiced concern over the simultaneous removal of all but one of the manhole covers. Avondale personnel responded with assurances that the situation would be carefully monitored. At 2:00 a.m. on October 9, 1975, Avondale's workers finished their shift and vacated the MARGARET, leaving the lower hulls unattended.

---

[**] Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. ODECO initially filed suit against Avondale. The final alignment of parties was: (1) ODECO, Ocean Drilling and Exploration Company, Murphy Oil Corporation, Highlands Insurance Company, Mentor Insurance Company and OIL Insurance, Ltd., as plaintiffs; (2) Avondale as defendant, counterclaimant and third party plaintiff; (3) ODECO as defendant in counterclaim; (4) Ocean Drilling and Exploration Company, Northbrook Insurance Company, and OIL Insurance, Ltd., as third party defendants; and (5) Northbrook Insurance Company as third party counterclaimant.

In addition to casting Avondale in judgment, the trial court rejected Avondale's counterclaim and third party demands for indemnity and business interruption.

The manholes remained open and pumps were operating in two starboard compartments. At approximately 5:00 a.m., ODECO employees on the upper decks heard a loud metallic sound, which the district judge found to be the snapping of the mooring cables. Water rapidly entered the hulls through the open manholes until the MARGARET sank, settling to the river bottom. Efforts to raise the barge were unsuccessful and the stresses created by the angle of repose finally caused the MARGARET to break apart.

### Why Did the MARGARET Sink?

Avondale argues that ODECO is responsible for the MARGARET's sinking and collapse because ODECO's employees (1) prematurely disconnected the barge's ballast pumps, (2) failed to monitor the King gauges and inclinometer, (3) failed to warn of hidden defects, and (4) failed to use proper salvage methods. In the course of making detailed factual findings, the trial court rejected Avondale's theory that the barge sank as a result of old age, storm damage, or ODECO's negligence. In addition, in finding that the loud noise which immediately preceded the sinking was the sound of snapping cables, the court rejected Avondale's contention that the noise was caused by the splitting of the MARGARET's hull.

The district court found "as a fact that the cause of the sinking and eventual collapse of the MARGARET was the removal of the manhole covers from the lower pontoons of the MARGARET by Avondale employees and the subsequent negligent failure on the part of Avondale to properly watch the exposed open manholes . . . ." In addition, the court found Avondale negligent "in stripping water from one end of the barge without counter-stripping a tank at the opposite end and . . . in abandoning and leaving unattended the pumping operations without notice to anyone." Finally, the trial court reasoned that Avondale was liable to ODECO as a bailee of the lower pontoon portion of the MARGARET.

On appeal, Avondale complains of certain evidentiary rulings, assigns error to the tri-al court's conclusions on the insurance issues raised, and questions the applicability of Rule 52(a) of the Federal Rules of Civil Procedure to our review inasmuch as the trial court's findings of fact are almost completely taken from a submission by ODECO. Avondale urges us to independently review the evidence. We address these issues in reverse order.

### Scope of Review

Avondale notes that this court has viewed with disfavor the practice of verbatim adoption of proposed findings, citing *Louis Dreyfus & CIE v. Panama Canal Co.*, 298 F.2d 733, 738 (5th Cir. 1962), in which we stated that as "an ideal matter it would be desirable for the trial judge to draft his own findings in every case." But we have also stated, "The clearly erroneous test is to be applied whether the [trial] court personally prepares such [factual] findings and conclusions or adopts those submitted by counsel." *George W. B. Bryson & Co. LTD. v. Norton Lilly & Co., Inc.*, 502 F.2d 1045, 1049 n.17 (5th Cir. 1974) (*citing Railex Corp. v. Speed Check Co.*, 457 F.2d 1040, 1041 (5th Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972); *Louis Dreyfus CIE v. Panama Canal Co.; Edward Valves v. Cameron Iron Works*, 289 F.2d 355 (5th Cir. 1961)).

■ In resolving this point, we find pertinent our observation in *Kaspar Wire Works, Inc. v. Leco Engineering & Mach.*, 575 F.2d 530, 543 (5th Cir. 1978):

It is asserted . . . that the district court's findings should not be affirmed because the trial judge adopted verbatim the proposals submitted by [the defendant]. We have frequently criticized this practice . . . . However, the mere fact that the court penned its name to a manuscript authored by an advocate does not itself indict them . . . . In this case, the comments the court made on the records show that the trial judge understood the case and performed his decision reaching process adequately.

(Citations omitted.) The expressions in *Kaspar* are applicable and controlling. The

record reflects that the trial court fully comprehended the factual and legal issues and adequately performed the "decision reaching process." The district court's findings of fact, albeit taken largely from proposed findings submitted by ODECO, are due the deferential review mandated by Rule 52(a). Hence, the inquiry we address is whether the findings are adequately supported by the record. We conclude that they are.

### Insurance—Who Secures?

■ Avondale maintains that ODECO was obligated to obtain builder's risk insurance [2] covering both companies and, further, that it should be considered an insured under ODECO's standard hull policies.

Avondale's first contention is based on a conversation between its insurance manager, Dean Church, and Terry Petty, President of ODECO. Church's recollection of this conversation is as follows: "I told him we knew the condition the rig was in and we didn't want the rig in the yard unless it was fully covered and we were both protected. And, he [Petty] said, 'Don't worry, we're covered.' And, he said he was 'going to get a quotation.'" In addition to this testimony, Avondale offered a document containing a handwritten notation "ODECO to furnish," penned next to the printed words, "Builder's Risk Insurance."

Petty testified that although he made inquiries concerning the cost of the all-risk coverage, it was his understanding that Avondale was to secure its own insurance.

In response to questioning about the "ODECO to furnish" notation, Petty testified that the notation might mean that ODECO would secure the insurance or that ODECO would pay the costs if Avondale secured it. Petty adamantly maintained that he did not consider ODECO obligated to procure Avondale's insurance.

The trial court was obviously confronted with a credibility choice. Crediting Petty the trial court concluded, "there was clearly no agreement that ODECO was bound to obtain a builder's policy .... ODECO's actions do not constitute a breach of any obligation on its part." [3]

The district court further found that "it was not until October 14, 1975—five days after the sinking and the day before the total collapse—that ODECO did obligate itself to *attempt* to place a special builder's risk policy and to name Avondale as an additional assured *if such coverage could be found*." (Emphasis in original.) Not surprisingly, this coverage could not be secured. The district court concluded that ODECO made reasonable efforts sufficient to exonerate it. In light of the evidence before the district court, we find no reversible error in the court's findings or conclusions on the insurance issue.

■ As its final contention with respect to insurance, Avondale maintains that it should receive the benefits of ODECO's policies,[4] a contention which requires a determination that Avondale was a co-partici-

---

2. In the shipping industry, a builder's risk policy insures against all risks, save design defects. Protection is afforded the owner and persons performing repairs on the vessel.

3. The district court supported its determination by noting:

   Although Dean Church, insurance manager for Avondale, testified that he indicated on October 7, 1975 that Avondale did not want the MARGARET to arrive at Avondale without a builder's risk policy and that Petty assured Church "we're insured," the court finds this evidence lacking in credibility inasmuch as Church admitted that (1) he knew Petty had not yet placed such a policy (obviously, since Petty was calling for a quotation); (2) his memoranda prepared shortly

   after the fact reflects no such advices to Petty (see ODECO Exhibit No. 54); (3) he had his secretary prepare a proposed insert for the suggested form of contract delivered to Avondale by Petty on October 8, 1975 (a full day later), wherein Church proposed that *Avondale* supply the policy in question .... The court concludes that there was no agreement prior to the sinking of the D/B MARGARET that ODECO would obtain a builder's risk policy naming Avondale as an additional assured.

4. ODECO was insured under three policies, issued by OIL Insurance, Ltd., Highlands Insurance Company, and Northbrook Insurance Company.

pant with ODECO. We agree with the district court's conclusion that Avondale acted alone in the repair work undertaken on the lower levels of the MARGARET. Avondale did not participate with ODECO in the repairs or in any of ODECO's drilling operations. There is no merit to this contention.

### Evidentiary Rulings

█ Avondale complains of several rulings by the trial court, underscoring claimed error in the trial court's crediting of the testimony, concerning the cause of the MARGARET's sinking, of an expert tendered by ODECO. This is a matter peculiarly within the discretion of the trier of fact. Fed.R.Civ.P. 52(a). We find no abuse of discretion in the district court's evaluation; nor can we say that the trial judge's findings, based on this witness' testimony, are clearly erroneous. Further, Avondale complains of the limitations imposed on the cross-examination of a witness concerning his inspection of the MARGARET in 1969. The witness had also examined the rig in 1974 and cross-examination was limited to the later viewing, as more relevant to the condition of the MARGARET in 1975. Rulings regarding the extent of cross-examination are within the trial court's discretion. We find no abuse of that discretion in the present case. We have examined Avondale's other complaints on evidentiary matters and find none meritorious.

### Factual Determinations—Negligence

█ The essence of Avondale's appeal is a challenge to the factual findings of the trial judge. Proper functioning of the appellate courts does not permit of a retrial or a redetermination of factual issues. We are not to substitute our judgment for that of the finder of facts, nor are we to disturb those findings unless convinced beyond peradventure that error exists. We have reviewed the detailed findings against the backdrop of the record and concur with the district court that the sinking of the MARGARET, and its subsequent collapse, was occasioned by the negligence of Avondale's employees.

Having concluded that the negligence of Avondale's personnel proximately caused the accident, we need not and do not address the factual and legal issues inherent in the bailment question.

The decision of the district court is AFFIRMED.