

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-1998

# Pennsylvania Env'l Def. Fndtn v. Canon McMillan Schl. Dist.

Precedential or Non-Precedential:

Docket 97-3136

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Pennsylvania Env'l Def. Fndtn v. Canon McMillan Schl. Dist." (1998). *1998 Decisions*. Paper 192.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/192

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 11, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3136

PENNSYLVANIA ENVIRONMENTAL DEFENSE
FOUNDATION (P.E.D.F.),
        Appellant

v.

CANON-MCMILLAN SCHOOL DISTRICT

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 94-cv-00534)

Argued: January 21, 1998

Before: SLOVITER, LEWIS* and GARTH, Circuit Judges

Reargued May 22, 1998

Before: SLOVITER, RENDELL and GARTH, Circuit Judges

(Opinion Filed August 11, 1998)

John E. Childe, Jr. (Argued)
Palmyra, PA 17078

 Attorney for Appellant

_____
*Judge Lewis heard argument in this matter on January 21, 1998 but,
due to illness, the panel was reconstituted and this matter was reargued
on May 22, 1998.

Steven M. Petrikis (Argued)
Rose, Schmidt, Hasley & DiSalle
Pittsburgh, PA l5222

 Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The factors that should be considered in a court's determination of a counsel fee award and the procedure to be used in that connection, issues that occupied all levels of the federal judiciary for numerous years, havefinally been resolved through a series of decisions of the United States Supreme Court. The question before us is whether, after all the effort that went into that resolution, we will allow the courts of this circuit to bypass the Supreme Court's explicit directions merely because counsel failed to interpose an objection to the procedure.

I.

Before us is an appeal by the Pennsylvania Environmental Defense Foundation ("PEDF"), a non-profit environmental action group, from an order of the district court awarding it attorneys' fees following the entry of a consent decree in its suit against Canon-McMillan School District under the Clean Water Act, 33 U.S.C. S 1365.

PEDF, which had sent the School District its detailed statutorily required Notice of Intent to Sue on August 20, 1993, brought suit on March 30, 1994, alleging that there were "repeated violations" of the terms of the School District's National Pollution Discharge Elimination System permit because of discharges from the Wylandville Elementary School sewage system into a tributary of Little Chartiers Creek in North Strabane Township, Pennsylvania. PEDF alleged that the violations were damaging the creek in violation of 33 U.S.C. SS 1311(a) and 1342 and sought injunctive relief, civil penalties and costs. PEDF was not the only entity concerned about this pollution. The

Pennsylvania Department of Environmental Resources ("DER") had renewed the School District's NPDES permit on March 17, 1994. DER also informed the School District of measures it needed to take to come into compliance with its permit limits. The Environmental Protection Agency, which had been conducting a contemporaneous investigation, submitted a Notice of Proposed Assessment of a Civil Penalty against the School District on August 30, 1994 and also directed it to come into compliance.

After the School District made what it referred to as several "minor process adjustments," it was apparently in full compliance with all of its permit limits by January 1995. On February 16, 1995, the School Districtfiled both a Motion for Stay and a Motion for a Protective Order, arguing that the litigation should be stayed and discovery halted because it was in complete compliance with its permit. The district court denied those motions on February 22, 1995, and PEDF continued with its preparation. In March of 1995, the district court granted PEDF's motion to file a reply brief to the School District's memorandum in opposition to PEDF's motion for partial summary judgment. PEDF filed that reply brief on March 23, 1995.

Thereafter, the parties reached a settlement and submitted to the district court a Consent Decree, which it signed on June 23, 1995. The settlement reserved the issue of the award of attorneys' fees, and shortly thereafter PEDF filed a motion for attorneys' fees and submitted a statement of fees and expenses. The district court held oral argument on the fees and then issued an order on December 2, 1996 that directed the parties to submit proposed findings of fact and conclusions of law. The court's order stated, inter alia:

> [E]ach party shall submit a proposed order which shall set forth, in specific detail, its proposal for completely resolving this issue. The court will adopt as its own the proposed findings and sign, without modification, the one proposed order which, in the judgment of the court, is most reasonable under the circumstances.

App. at 94 (emphasis in original). Neither party objected to this order, and both filed the required proposedfindings and conclusions.

3

PEDF's proposed findings of fact and conclusions of law requested a total of $70,282.09. It arrived at thatfigure by the formula set out in Hensley v. Eckerhart, 461 U.S. 424 (1983), through calculating a "lodestar" based on a proposed "reasonable hourly rate" of $160 per hour for attorney John E. Childe and $60 per hour for Paralegal Cindy Smith, multiplied by "hours reasonably expended." App. at 95, 118. PEDF submitted a detailed account of these charges and accompanying time slips. The School District's proposed findings of fact and conclusions of law suggested the much lower fee of $20,414.62. The district court adopted verbatim the School District's proposed findings of fact and conclusions of law, except that it submitted its own short introduction. It follows that although we will refer to the court's order, it must be remembered that the "order" is in fact in the language prepared by the School District.

Although the order was highly critical of certain aspects of PEDF's fee request, including the proposed rates and the expenditure of time on certain issues, it did not explicitly reduce the hours that PEDF billed for these services. Instead, it was keyed to the determination that PEDF was entitled to no fee for the period after which the School District was in "full compliance." It stated,"By January of 1995, it is thus undisputed that no further violations were occurring at the Wylandville Elementary School system, and the expenditure of $18,000 for structural modifications assured that the problems would not recur . . . . By its own calculations, PEDF had expended $8,963 in attorney's fees as of the date when the Wylandville Elementary School system was in full compliance. . . ." D.C. Opinion at 7. On the basis that PEDF had needlessly pursued the litigation after January 1995, after the violations had been abated, the order adopted by the district court granted PEDF all of the attorneys' fees it had requested for the time period through January 1995, but no fees for time spent after that date, except for $1,910 in connection with the consent decree. It also awarded PEDF $3,000 for fees in connection with the fee litigation and $6,541.62 in costs. D.C. Opinion at 21-22.

The order, in language stemming from the School District, concluded that "the total of $20,414.62 is

generous under the circumstances, and, although the facts and law relating to duplicative billing, hourly rates and degree of difficulty would justify a reduction of this amount, the Court will award this amount at this time." D.C. Opinion at 22. We have jurisdiction over PEDF's appeal pursuant to 28 U.S.C. S 1291.

II.

The award of attorneys' fees in this case is authorized under the citizens' suit provision of the Clean Water Act, which provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. S 1365(d). The statute places no restriction on the award other than that the party entitled to the award be "prevailing or substantially prevailing."

In Hensley v. Eckerhart, 461 U.S. 424 (1983), and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986), the Supreme Court adopted the approach first set forth in this court's opinions in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973), and Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976), with respect to the appropriate procedure and considerations for a district court to follow in awarding attorneys' fees. Central to the Supreme Court's decisions has been its adoption of the "lodestar" formula, which requires multiplying the number of hours reasonably expended by the reasonable hourly rate. See Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Delaware Valley Citizens' Council, 478 U.S. at 564; Blum v. Stenson, 465 U.S. 886, 888 (1984); Hensley , 461 U.S. at 433.

The "starting point" in determining the appropriate hourly rate is the attorneys' usual billing rate. Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). The Supreme Court has directed that the district court should then consider the"prevailing market rates" in the relevant community. Blum , 465 U.S. at

5

895 (1984); see also Missouri v. Jenkins, 491 U.S. 274, 285 (1989). In calculating the second part of the lodestar determination, the time reasonably expended, "[t]he district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are `excessive, redundant, or otherwise unnecessary.' " Windall, 51 F.3d at 1188 (quoting Hensley , 461 U.S. at 433-34). Once the court has calculated the lodestar it may adjust that amount, primarily based on the degree of success that the plaintiff obtained. See Hensley , 461 U.S. at 435. However, the cases make clear that before any adjustments are made, the district court must calculate a lodestar. See Windall, 51 F.3d at 1190.

In Windall, this court considered a district court's award of attorneys' fees under S 1365(d) of the Clean Water Act, which presented a situation where the public interest group plaintiffs had been awarded injunctive relief but no monetary damages. The district court had applied a 50 percent negative multiplier to the lodestar because of the failure to obtain monetary relief. Id. at 1189. On appeal, we held that the use of the negative multiplier was error, rejecting the "rough mathematical" approach applied by the district court. Id. at 1189-90.

Throughout the opinion we emphasized the importance of adherence to the formulaic approach set out by the Supreme Court. At the outset, we stated that the amount of a fee award is within the district court's discretion "so long as it `employs correct standards and procedures and makes findings of fact not clearly erroneous.' " Id. at 1184 (emphasis added) (quoting Northeast Women's Ctr. v. McMonagle, 889 F.2d 466, 475 (3d Cir. 1989)). Thus, we held that rather than apply the across-the-board percentage reduction reflecting its view of the result achieved, the district court should have considered the relationship between the degree of success and the amount of the award. That step could only be taken after the court had calculated the lodestar. "It is, however, essential to calculate the lodestar before considering adjustments. Only after the lodestar is determined does the district court have discretion to consider results obtained and, in doing so, to

6

exclude some or all of the time spent on unsuccessful claims." Id. at 1190.

718<!>We also stressed the importance of the court's

articulation of the basis for the award. We stated that the district court must "provide a concise but clear explanation of its reasons for [a] fee award.' " Id. at 1188 (quoting Hensley, 461 U.S. at 437). The defendant in Windall had contended in its cross-appeal that the district court had failed to consider some of its specific objections regarding the hours expended. In response, we stated,

> [t]he magistrate judge did not consider the Air Force's objections to particular time charges. The magistrate judge was reluctant to second guess counsel's judgments about what time and attention particular legal problems should be given. Hensley, however, directs district courts to consider a party's objections to particular time charges and make their findings on the hours that should be included in calculating the lodestar. The district court failed to make any such findings here.

Id. at 1189. Our view of the necessary procedure was made explicit in the passage in which we stated, "[t]he district court seems to have thought that its negative multiplier made attention to the Air Force's specific objections unnecessary. Hensley does not permit such a short cut." Id. at 1189 n.14 (emphasis added).

The Supreme Court continued to follow the lodestar approach after Hensley, but emphasized that the district court was permitted to adjust the fee depending on the situation. See Delaware Valley Citizens' Council , 478 U.S. at 565. However, in the case before us, the district court decided to dispense with that process, which may be arduous and is often adversarial, and determined in advance to adopt the findings and conclusions of one party or the other "without modification." App. at 94. That procedure forced each party to adjust its submission because of the knowledge that the district court would only choose one of the two options. In effect, the district court conducted a variation of a "silent auction," with the parties bidding against themselves and each other. While there is

7

nothing wrong with encouraging a party who seeks a fee to compromise its request, there is no justification for the use of the "silent auction" procedure in setting a statutory fee and no party has cited any authority which would allow it. The instances in which courts may not have followed the lodestar approach have been, as far as we know, instances where the parties have reached an agreement as to the amount of fee. Regrettably, such a resolution was not reached in this case.

In support of the procedure used by the district court, the School District refers us to our opinion in Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209 (3d Cir. 1993), where we stated that "a district court's findings, when adopted verbatim from a party's proposed findings, do not demand more stringent scrutiny on appeal." Id. at 1215. We adhere to our own precedent, notwithstanding other views on this issue. See, e.g., Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 574 (5th Cir. 1996) (stating on review of an order assessing a penalty, that "the court adopted Sierra Club's proposed findings and conclusions with minimal revision. Under such circumstances, we review the court's findings of fact with caution"); In re Colony Square Co., 819 F.2d 272, 274-75 (11th Cir. 1987) (citing cases admonishing trial courts for verbatim adoption of proposed order drafted by litigants).

Our concern here goes beyond the verbatim adoption of a party's proposed findings of fact and conclusions of law. We agree with the court in Odeco, Inc. v. Avondale Shipyards, Inc., 663 F.2d 650 (5th Cir. 1981), that the "mere fact" that a district court adopts a party's factual findings verbatim "does not itself indict them." What is key is whether those findings are in fact reflective of the district court's views. Thus, such a verbatim adoption was acceptable to the appellate court in Odeco because "[t]he record reflects that the trial court fully comprehended the factual and legal issues and adequately performed the decision reaching process." Id. at 652-53 (citation omitted). The central issue is whether the district court has made an independent judgment. See In re Colony Square , 819 F.2d at 275-76.

In this case, because the circumstances underlying the entry of the order are clear from the record, we cannot presume that the district court made an independent judgment about the law and then decided that one party's proposed findings of fact and conclusions of law precisely expressed its judgment. Instead, because the court announced in advance it would use this procedure, we cannot discount the possibility that the district court may not have agreed in totality with the findings of fact or legal conclusions in either of the proposals, but chose one simply because it came closest to its own view. While this course of action may have facilitated the decision for the district court, it is not only contrary to the established procedure for awarding attorneys' fees but also offends our belief that a judge's findings and conclusions should represent that judge's view, no more and no less.[1]

III.

The School District concedes that the procedure used by the district court did not adhere to the steps directed by the Supreme Court for fixing of a contested counsel fee. Instead, the School District argues that PEDF waived its objection to any defects in the procedure by failing to object when it was announced by the district court. It is an argument that is not without some merit. In the usual circumstance, a party's failure to object will result in waiver of an issue on appeal. See Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992). Here, PEDF did not interpose any objection to the district court's announcement that it would set the fee by accepting one party's submission or the other. Notwithstanding PEDF's attempt at justification and rationalization, the fact remains that it did not object.

_____

1. Our dissenting colleague notes that we cite no authority that disapproves the district court's "either/or" protocol. As far as we know, in no other case has a district court applied that procedure, and certainly not in connection with fixing a disputed attorney's fee subject to a Supreme Court's instruction on the procedure to be followed. What may be appropriate for baseball salary arbitration is not necessarily appropriate for the law courts.

Nonetheless, we have recognized that the concept of plain error may be applied in the civil context despite the lack of objection when a district court has committed a serious and flagrant error that jeopardized the integrity of the proceeding. See generally Walden v. Georgia-Pacific Corp., 126 F.3d 506, 520-21 (3d Cir. 1997), cert. denied, 118 S. Ct. 1516 (1998). The clear deviation from an established legal rule can qualify as plain error. Of course, this is a power we exercise only "sparingly." See Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 89 F.3d 976, 993-94 (3d Cir. 1996). In this instance, because the manner in which the order was entered goes to the heart of the judicial process, we will address the procedure, notwithstanding PEDF's lack of objection. In doing so, we do not condone PEDF's failure to bring before the district court its lack of approval of the course on which the court was embarking, and its silence may have, and probably did, mislead the district court.

Once we review the court's ruling, the error is plain. There can be no serious dispute that PEDF qualified as the "prevailing party." It follows that the district court should have first decided the reasonable hourly rate based on the "prevailing market rate" rule and multiplied that rate by the time reasonably expended to obtain the "lodestar." The court should have then made adjustments, if any, based at least in part on the degree of success of the litigation.

Regarding the hourly rate, the district court's order stated that "PEDF's proposed hourly rate is high even by Pittsburgh standards. Plaintiff's counsel, whose office is in Hummelstown, a small community near Harrisburg, has not offered any evidence that the typical hourly rate for legal services to public non-profit organizations in his community exceeds $80.00 per hour." D.C. Opinion at 14-15. Despite this comment, the court allowed the hourly rate requested through January of 1995. Similarly, although the order questions the propriety of time claimed in the PEDF fee petition in several respects, such as failing to apportion time for preparation of the complaint in this case with that spent in drafting a similar complaintfiled by PEDF, the court never found what was a reasonable time for each task. Instead the court apparently made the

10

adjustments it may have believed desirable by accepting the School District's proposed "cut-off" date for the entire action. PEDF points out that this is inconsistent with the court's rulings after that date which rejected the School District's request for a stay and which authorized, even if it did not necessarily encourage, further action by PEDF.

The School District argues that the district court order does implicitly calculate a "lodestar" by adopting the rate of $160 and $60 per hour from PEDF's original fee petition, and multiplying that by the amount of hours expended before January of 1995. We find this assertion unpersuasive because it requires us to make assumptions that have no support in the order which, contrary to adopting the lodestar, contains statements questioning the components of a calculated lodestar.

Nor is there any indication that the district court made a separate calculation for fees in connection with the fee petition, as required by Windall. 51 F.3d at 1190. PEDF had sought $12,802 for preparing its original fee petition and $8,560 for preparation of the proposed findings of fact and conclusions of law. The order awarded PEDF $3,000. This figure is never explained in terms of the required separate calculation of a lodestar for the fees in connection with the fee petition and a subsequent adjustment to that figure based on the allowed criteria. The order merely states that the fees requested were unreasonable and notes that the request for fees in preparing the fee request is nearly 25 percent of the total fee request and may be duplicative of requests in other litigation. That explanation is not sufficient to constitute compliance with the direction of Windall.

The School District contends that even if the district court failed to employ the correct legal principles, it was "harmless." It argues that if the district court had calculated a lodestar, and then made an adjustment, PEDF would have received a lesser amount than it did, and thus PEDF did not suffer from the district court's possible error. We reject this contention because it is speculative. We simply cannot know from this record what the court would have done.

11

Both parties have addressed the merits of the amount ultimately awarded. We do not reach that issue. Instead, we will await such time as we have a district court order that follows the accepted protocol. Were it not for the importance of the issue raised in this case we would be most reluctant to visit this satellite litigation again on the district court. It would be preferable were the parties to resolve the remaining issue by negotiation or mediation, a course we can only suggest and not direct.

IV.

For the above reasons, we will reverse the order of the district court awarding attorneys' fees to PEDF, and remand for further proceedings consistent with this opinion.

Garth, Circuit Judge, dissenting.

The district court utilized a novel procedure to determine the amount of attorneys' fees to which Appellant PEDF, as the prevailing party, was entitled. Neither PEDF nor the School District ever objected to this procedure, although they were afforded ample time and opportunity to do so. Notwithstanding this fact, PEDF now appeals the use of the district court's procedure and the majority reverses.

I.

I must dissent from the opinion of the panel majority for two (2) fundamental reasons.

First, PEDF acquiesced to the district court's procedure, and therefore waived its right to raise this issue on appeal. PEDF admittedly understood the district court's"either/or" and "without modification" order, and nevertheless, strategically chose not to object. The authority cited by the majority requiring a lodestar calculation has no relevance to this case. Here, both parties had waived all objection to the district court's order. Viewed in this light, I do not feel that the majority has satisfactorily explained why PEDF should be permitted to recant its previous acquiescence of the district court's protocol, particularly where no substantial rights of any parties have been implicated.

Second, the majority has not explained why cases where the calculation of the lodestar amount is disputed should govern cases such as this case where it is the procedure giving rise to the attorneys' fee award itself -- and not the calculation pursuant to the lodestar formula -- that is at issue. The majority has cited no authority holding that procedures of this kind (in this case, the district court's "either/or" and "without modification" order of December 2, 1996) are illegal. Parties can agree to an attorneys' fee award, and the majority acknowledges that such agreements are not governed by the lodestar calculus. The majority fails to explain, however, why the parties cannot also agree to the procedure that the district court employs in determining those fees.

By holding that the lodestar formula must be employed even in the absence of an objection, the majority effectively

13

holds that the lodestar analysis must be utilized in every attorneys' fee application that comes before the district courts of this Circuit. Thus, according to the majority, parties can agree to a fee outside the reach of the lodestar, but they cannot agree to an alternative procedure to determine those fees.

As I believe this is no precedent for this unjustified and far-reaching holding, I respectfully dissent.

II.

The facts are simple and straightforward:

(1) The parties reached a settlement agreement aft er one year of litigation, and memorialized their agreement in a consent decree. The consent decree did not resolve the issue of attorneys' fees, but instead left that issue for the district court to address.

(2) On December 2, 1996, the district court issued an order directing each party to submit its proposedfindings of fact and conclusions of law regarding the issue of attorneys' fees. That order provided:

> [E]ach party shall submit a proposed order which shall set forth, in specific detail, its proposal for completely resolving this issue. The court will adopt as its own the proposed findings and sign, without modification, the one proposed order which, in the judgment of the court, is the most reasonable under the circumstances.

Order, Dec. 2, 1996 (emphasis in original).

(3) On February 13, 1997, the district court adopt ed without modification the School District's proposed findings.

(4) Although nearly two and a half months had elap sed from the time the district court established the protocol to which both parties acquiesced and the time the court announced its decision, at no time did either party object to the district court's order.

(5) On February 24, 1997, PEDF filed a Motion fo r Reconsideration, but in that motion still did not object to

14

the "either/or" and "without modification" protocol that the district court had adopted.

(6) During oral argument,[1] counsel for PEDF conceded that he understood the district court's December 2, 1996, order as proposing an "either/or" situation:"either (the district court) was going to accept our proposedfindings or he was going to accept the School District's." According to counsel for PEDF, "there was no question about that."

III.

I believe that PEDF has waived its right to pursue this appeal on the basis of the procedure utilized by the district court in determining attorneys' fees. At oral argument, counsel for PEDF conceded that he understood the district court's adopted procedure and the ramifications of that procedure. PEDF acknowledged that "there was no question" that the district court would either accept PEDF's proposed findings and fee award or it would accept the School District's proposed findings and fee award. Thus, PEDF made a strategic decision not to object to the district court's proposed procedure in the hope that the district court might accept its -- PEDF's -- proposal without modification instead of accepting the School District's.

That PEDF's deliberate choice not to object to the district court's procedure subsequently turned out to have been disadvantageous cannot be a basis for reversing the district court's decision. See Bivens Garden Office Bldg., Inc. v. Barnett Banks, 140 F.3d 898 (11th Cir. 1998) (holding that plaintiffs waived the issue of the district court's recusal when the plaintiffs strategically decided not to raise the recusal issue before trial despite their awareness of facts upon which the motion for recusal would have been based). Indeed, it was only after the district court adopted the School District's proposed findings that PEDF-- for the first time -- complained by filing a Motion for Reconsideration, and even in that motion PEDF did not identify the district
_____

1. These concessions were made during the first oral argument held on January 21, 1998. The panel was reconstituted and a second argument held after Judge Lewis fell ill.

court's procedure as the gravamen of its complaint. Quite simply, by not objecting, PEDF waived its right to appeal the district court's attorneys' fee procedure. See Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992).

In Continental Casualty Co. v. D'Andrea, Inc. , ___ F.3d ___, 1998 WL 381721 (3d Cir. July 10, 1998), this Court recently upheld a magistrate judge's attorney fee sanction of $38,000 where no objection or appeal to the district court had been taken by counsel. In Continental , the magistrate judge required the defendant, D'Andrea, to pay his opposing party's attorneys' fees and costs for additional discovery as a condition to permitting D'Andrea to amend his answer nearly two (2) years after the original answer had been filed.

D'Andrea did not object to the magistrate judge's condition, and at no time did he raise the issue for review before the district court. In speaking for the Court, Judge Rosenn concluded that in the absence of an objection, D'Andrea accepted the condition imposed upon him in exchange for the privilege to amend his answer. See id. at 6. Judge Rosenn reasoned, as I do now, that the failure to object for strategical reasons constituted a waiver. See id. ("Presumably, [D'Andrea's counsel] reasoned that, even with the imposition of the attorneys' fees and costs, it was strategic for his client to pay them under the circumstances.")

Furthermore, even if D'Andrea had not accepted the magistrate judge's condition, in terms as applicable to the case at hand as they were to Continental, Judge Rosenn commented that this Court should not interfere with a lower court ruling in the absence of an objection because such procedures

> would allow a party to sandbag the district court and other parties by allowing or inviting the court to make an error and then springing the issue on the other party on appeal. See 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure S 2472, at 93–95 (1995). Explicit opposition to or an objection on the record to a proposed order permits the court to consider the position of the opposing party and modify,

16

or even possibly abandon, the order in light of the arguments raised.

Continental, 1998 WL 381721, at 7 (citations omitted).

In the present case, PEDF knew and accepted the fact that the district court was not going to engage in any adjustments or make any of its own computations when determining the appropriate fee in this case, as it very well might have done if PEDF had objected to the district court's procedure and the court had then employed a traditional lodestar approach under Hensley v. Eckerhart, 461 U.S. 424 (1983). Given the district court's explicit language in its December 2, 1996 order, and counsel for PEDF's acknowledged understanding of that language, it was incumbent upon PEDF to make its position known at that time and object to the "either/or" and "without modification" procedure if it opposed such a protocol. It did not. The benefit of hindsight cannot change this procedural infirmity.

Furthermore, the majority has turned a blind eye toward the strict standards that a litigant must satisfy to seek review under our "plain error" jurisprudence. Under the plain error standard, three requirements must be met: (1) there must be an actual error -- a deviation from or violation of a legal rule; (2) the error must be p lain -- i.e., clear and obvious under current law; and (3) the e rror must affect substantial rights. See Walden v. Georgia-Pac. Corp., 126 F.3d 506, 520-21 (3d Cir. 1997), cert. denied, 118 S. Ct. 1516 (1998) (citing United States v. Olano, 507 U.S. 725, 732-34 (1993)); see also Fleck, 981 F.2d at 116 (stating that the error must be "fundamental and highly prejudicial" that results in a "miscarriage of justice" to warrant a reversal when party did not object during proceeding below). It has been our practice to exercise our power to reverse for plain error sparingly. See Walden, 126 F.3d at 520.

In this case, not only was there no error -- let alone plain error -- in the district court's choice of protocol, as I discuss below, but the majority has not explained how the district court's order affected PEDF's "substantial rights" or resulted in a "miscarriage of justice." Instead, the majority

17

has by-passed this critical element of "plain error" review by announcing that the district court's alleged error "jeopardized the integrity of the proceeding." Majority Op. at 10. In so stating, the majority has failed to appreciate the fact that jeopardizing the integrity of a proceeding is only meaningful in the context of the substantial rights that were supposedly prejudiced.

In this case, PEDF received $20,414.62, instead of the $70,282.09 it had requested. Apart from the fact that no one can predict that PEDF will receive a different fee award after the majority's remand,2 the majority cites no authority holding that the nature of attorneys' fees and the amounts involved here implicate PEDF's substantial rights and result in manifest injustice such that we should exercise our review under the plain error doctrine. Indeed, I am compelled to point out that the majority has cited no authority at all which would in any way repudiate the protocol utilized by the district court. Accordingly, I would hold that the issue has been waived.

IV.

My second basis of contention with the majority stems from the fact that there is simply nothing illegal or improper about the procedure the district court employed for determining attorneys' fees. Citing only inapposite attorneys' fee appeals -- inapposite because as noted above, none of the cases cited in the majority opinion involve a dispute over the district court's procedure -- the majority of this Court reverses the district court for implementing a procedure that has never been disapproved by any court. While the majority has acknowledged that where the parties have agreed to a particular attorneys' fee, their agreement need not follow nor comply with the lodestar approach delineated in Hensley v. Eckerhart and its progeny, it has refused to recognize that PEDF's failure to object to the protocol ordered in this case was tantamount to an acceptance of the outcome of that

_____

2. We defer to the district court's discretion in making fee awards. See Public Interest Research Group, Inc. v. Windall, 51 F.3d 1179, 1184 (3d Cir. 1995).

18

procedure. That acceptance by PEDF and the School District is not one whit different in substance than an agreement by the parties to a particular fee arrangement.

In the case before us, the majority has cited and discussed only cases where the parties have contested the calculation of the lodestar, not the use of the lodestar formula itself. See Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546 (1986) (contesting lodestar calculation based on the enhancement of a fee for superior performance by opposing counsel); Hensley v. Eckerhart, 461 U.S. 424 (1983) (reversing district court's lodestar calculation because court failed to consider the relationship between the success of the prevailing party and the amount of the fees granted); Public Interest Research Group v. Windall, 51 F.3d 1179 (3d Cir. 1995) (contesting district court's lodestar calculation applying negative multiplier, using incorrect market as basis for hourly rate, failing to deduct duplicative and excessive time). The calculation of the lodestar, however, has nothing to do with cases where the parties have either consented to a particular fee (i.e., a fee agreement) or have agreed to a particular formula utilized by a district court in order to determine that fee, such as the formula adopted by the district court here.

When parties settle the issue of outstanding fees, it is without our realm to instruct them how to arrive at a mutually acceptable amount. If the amount of attorneys' fees is accepted by all parties, no case in controversy exists for us to exercise judicial oversight or judicial review regardless of how those fees were ultimately determined or what procedure or principle, if any, the parties employed in their calculations. When the parties consent or stipulate to a fee award, they are necessarily consenting to the procedure employed to derive that award even though that procedure may not have involved a traditional lodestar analysis. It is not within our province to question the consensual nature of that agreement.

By the same token, there is no difference between the protocol that was employed by the district court in this case without objection -- i.e., accepting one of the party's proposed findings without modification -- and the means by which both parties typically settle or agree upon

19

attorneys' fees. In the latter instance where the parties agree on the amount of attorneys' fees to be awarded to the successful party, the parties rarely, if ever, employ a traditional lodestar calculation. Moreover, in each instance -- where no objection is raised to a particular method proposed by the district court for its fee determination, or where all parties agree on the amount of fees to be awarded -- no lodestar analysis is indicated, nor, contrary to the majority's assertions, must it be utilized. In both situations -- agreement to the procedure or agreement to the fees themselves -- the award is valid irrespective of the protocol used and must be upheld.3

Yet, the Court has now held that unless the lodestar approach is used, any attorneys' fee determination made by the district court is illegal. Not only does this conclusion fail to account for those cases where the parties have agreed to a particular sum and have not based that sum upon the lodestar -- which the majority acknowledges is clearly acceptable -- but as I have pointed out it also runs counter to the spirit of innovation that this Court has encouraged district courts to nurture when faced with varying situations.4 See, e.g., Krell v. Prudential Ins. Co. (In

_____

3. Similarly, had the district court informally suggested that PEDF and the School District meet outside of the district court's chambers and seek to settle the issue of attorneys' fees without court intervention, any
agreed upon amount would have been valid despite the fact that traditional lodestar principles were not involved. The majority does not object to such an agreement, as the majority acknowledges that the lodestar approach is not always used in determining attorneys' fees:

> [t]he instances in which courts may not have followed the lodestar approach have been, as far as we know, instances where the parties have reached an agreement as to the amount of the fee. Regrettably, such a resolution was not reached in this case.

Majority Op. at 8. Furthermore, the majority concludes by stating that "[i]t would be preferable were the parties to resolve the remaining issue by negotiation or mediation," id. at 12, neither of which is conditioned upon a lodestar calculus. See also Hensley, 461 U.S. at 437 ("Ideally, of course, litigants will settle the amount of a fee.")

4. Furthermore, there is authority to support a court's use of an "either/or" procedure in making a determination. See, e.g., Mobil Oil

20

re: Prudential Ins. Co.), Nos. 97-5155, 97-5156, 97-5217, 97-5312, 1998 WL 409156, at 44 (3d Cir. July 23, 1998) (upholding as "appropriate" and "innovative" the district court's novel use of a bifurcated fee structure in large, nationwide class action suit). Indeed, as I have pointed out, the majority would have preferred that the parties had reached a fee agreement in this case, irrespective of whether that settlement would have been based upon the lodestar calculation. See n.3, supra.5

Despite the majority's disapprobation, the protocol employed by the district court -- choosing one of the parties' proposals without modification -- is neither illegal nor radical. Such a dispute-resolving procedure has been used in major league baseball salary arbitrations with great success for nearly 25 years. See Roger I. Abrams, Legal Bases: Baseball and the Law 87-89 (Temple Univ. Press 1998). Under baseball's salary arbitration scheme, a neutral arbitrator

> selects either the final demand of the eligible player or the final offer of the employing [baseball team]. The arbitrator may not mediate or compromise . . . A greedy player who sets his demand too high or a stingy club that makes an offer too low is likely to lose . . . .

Id. at 87-88 (emphasis added). The author explains that not only does this system encourage settlement between the parties, but it also has the effect of bringing the salary offer and the player's demand closer together, as both sides

_____

Exploration Co. v. Federal Energy Regulatory Comm'n , 814 F.2d 998 (5th Cir. 1987), op. clarified by Mobil Oil Exploration Co. v. Federal Energy Regulatory Comm'n, 814 F.2d 1001 (5th Cir. 1987) (holding that venue was properly determined by the toss of a coin where the same proceeding was instituted in two circuits at the same).

5. In light of the district court's "either/or" and "without modification" protocol, I make no comment about the lodestar's applicability to this case. I recognize, however, that the district court was of the view that it had adhered to a lodestar calculation, accepting PEDF's rate and hours up until January 31, 1995, the date that the district court determined the School District had been in compliance with the permit and effluent emissions allowed under its permit.

21

attempt to predict how the arbitrator will rule. See id. at 88. Hence, just as district courts have been encouraged to employ alternative dispute resolution techniques, so too should they be encouraged to look to other disciplines and to employ other labor-saving techniques so as to adopt efficient, time-saving, and effective means of disposing of controversies and disputes.

Thus, while I agree that a district court should employ a traditional lodestar analysis when the procedure or standard is disputed, I cannot agree that the lodestar calculation must be employed in every attorney fee determination that arises before the district court. Our jurisprudence is sufficiently flexible to allow for varied approaches, depending upon the circumstances of the case and the will of the parties. In my view, parties may by agreement or without objection, as they did here, utilize an alternative procedure for calculating fees without offending our jurisprudence.

V.

In conclusion, I fear that the ramifications of this Court's decision transcend the issue of attorneys' fees and may have the effect of stifling innovative and non-traditional approaches to case and issue management in the district courts. If district courts cannot inaugurate a new procedure without the interference of this Court -- a procedure, I might add, that has never been declared illegal or improper by this or any other court until today -- then we will be guilty of discouraging the development of modern litigation techniques and practices in the face of ever increasing dockets and the sky-rocketing expense of litigation. By reversing the district court for using a different and novel protocol to which the parties acquiesced, the majority's decision may have the unfortunate effect of chilling district court innovation and efficient case management.

I suggest that the majority here has turned this Court into a micro-manager. In so doing, it has unjustifiably permitted PEDF a "second bite at the apple" without PEDF ever having made known any objection to the district court's protocol. Accordingly, I would affirm the district court's February 13, 1997, order.

22

Because the majority has held otherwise, I respectfully dissent.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

23