**CITYSIDE ARCHIVES, LTD.**

v.

**NEW YORK CITY HEALTH and HOSPITAL CORPORATION, et al.**

**Civil Action No. 95–6108.**

United States District Court,
D. New Jersey.

March 3, 1999.

---

**654**

Leonard H. Berkeley, Weiner Lesniak, Parsippany, for plaintiff.

Eric P. Jewell, John P. Woods, Michael D. Hess, Corporation Counsel of the City of New York, New York City, for defendants.

## LETTER OPINION

### ORIGINAL ON FILE WITH CLERK OF THE COURT

POLITAN, District Judge.

This matter comes before the Court on three separate motions, namely: (1) Defendant New York City Health and Hospitals Corporation's Motion to Amend the Judgment entered on August 18, 1998 by this Court; (2) counsel of record for plaintiff Cityside Archives, Ltd.'s Motion for Attorney's Fees; and (3) counsel of record for plaintiff Cityside Archives, Ltd.'s Motion to be Relieved as Counsel. This Court heard oral argument on October 29, 1998. For the reasons stated herein, defendant New York City Health and Hospitals Corporation's Motion to Amend the Judgment is **GRANTED.** Additionally, counsel of record for plaintiff Cityside Archives, Ltd.'s Motion for Attorney's Fees is **GRANTED IN PART AND DENIED IN PART.** Finally, counsel of record for plaintiff Cityside Archives, Ltd.'s Motion

to Be Relieved as Counsel is **DISMISSED AS MOOT.**

### STATEMENT OF FACTS/PROCEDURAL HISTORY

Plaintiff Cityside Archives, Ltd. ("Cityside"), a corporation engaged in the business of archival storage and warehousing, and defendant Lincoln Medical and Mental Health Center ("Lincoln") entered into a contract for the storage of certain records (the "Agreement"). The Agreement was signed by a Lincoln representative on February 24, 1994 and by a Cityside representative on February 25, 1994. Defendant New York City Health and Hospital Corporation ("NYCHHC") is a New York public benefit corporation which supervises certain activities of several member hospitals, including Lincoln.

On November 13, 1995, Cityside filed a Complaint against NYCHHC and Lincoln. Cityside maintained the position that Lincoln ceased making payments to Cityside for various invoices for storage and related services which Cityside allegedly performed. Essentially, Cityside claimed that Lincoln was obligated to store its x-rays (hereinafter the "Lincoln x-rays") with Cityside and to obtain a release to Cityside of non-x-ray or paper records stored at Pierce Leahy (hereinafter the "Pierce records"). Accordingly, Cityside set forth several counts in the Complaint: (1) breach of contract; (2) fraud; (3) breach of covenant of good faith and fair dealing; and (4) tortious interference with contract. Cityside also sought specific performance and $382,879.96 in "past due rent, current rent, rent to the end of the term and permanent removal charges." *See* Complaint filed November 13, 1995.

This Court found during the liability phase of the trial that defendants Lincoln and NYCHHC had breached the Agreement *only* with regard to the Pierce records that were supposed to have been transferred to Cityside. Cityside did not prevail on all other claims, including the

principal part of the litigation which dealt with the storage of the Lincoln x-rays.

On August 18, 1998, this Court entered judgment in favor of Cityside but refrained from entering a final judgment until counsel for Cityside, Mr. Leonard Berkeley, provided the Court with affidavits of services rendered that included only those fees incurred in connection with the Pierce records portion of the litigation.

Thereafter, Mr. Berkeley filed two separate motions; a Motion to be Relieved as Counsel and a Motion for Attorney's Fees. NYCHHC also filed a Motion to Amend the Court's Judgment and filed several briefs in opposition to Mr. Berkeley's Motion for Attorney's Fees.

Despite this Court's instructions to submit an itemized list of fees incurred only in connection with the Pierce records, on September 29, 1998, Mr. Leonard Berkeley, submitted a letter brief and a Supplemental Certification in support of the Motion for Attorney's Fees. In his letter brief, Mr. Berkeley once again indicated that he was relying upon the previously-submitted Certification of Services and reiterated that, "[t]here was virtually no time spent exclusively on the issues of either the Lincoln records stored at Pierce Leahy or the Lincoln x-rays stored at Pierce Leahy." *See* September 29, 1998 letter brief submitted by Leonard Berkeley, Esq., pages 1–2; *see also* original Certification dated June 12, 1998. In the Supplemental Certification, Mr. Berkeley contended that, "It is my belief, and only a belief, that perhaps 10% of the time, if that much was related to the issue of the [Lincoln] x-ray storage." *See* Supplemental Certification dated September 29, 1998, ¶ 4.

Upon review of Mr. Berkeley's letter brief and Supplemental Certification, this Court once again contacted Mr. Berkeley's office, via telephone, and inquired into whether Mr. Berkeley had any intention of complying with this Court's direction to focus *only* on the attorney's fees accrued in connection with the Pierce Leahy records. Mr. Berkeley represented that he

was relying on the September 29, 1998 letter brief submitted, the Supplemental Certification, as well as, the original Certification of Services and Exhibit # 228 (a mass of paper two-inches thick typed in the most microscopic print). Mr. Berkeley memorialized this conversation in a brief letter to the Court and enclosed an additional copy of the referenced documents for ease of reference. *See* October 8, 1998 letter submitted by Leonard Berkeley, Esq. and attached documents.

Subsequent to NYCHHC being given the opportunity to oppose the Motion for Attorney's Fees, Mr. Berkeley then filed an additional Certification on October 19, 1998 wherein he reiterated that, "For the reasons set forth herein it is truly believed that Cityside is entitled to all of the counsel fees requested in its prior submission." *See* Certification of Leonard Berkeley dated October 19, 1998, ¶ 16.

Essentially, Mr. Berkeley maintains the position that virtually no time was spent on matters unrelated to the Pierce records and, accordingly, requests that this Court grant counsel's request for attorney's fees in the amount of $630,703.40.

## DISCUSSION

### I. Motion to Amend the Judgment

■ A proper motion to alter or amend a judgment "must rely on one of three major grounds: '(1)an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice.'" *North River Insurance Company v. CIGNA Reinsurance Company*, 52 F.3d 1194 (3d Cir.1995)(citing *Natural Resources Defense Council v. U.S. Envtl. Protection Agency*, 705 F.Supp. 698, 702 (D.D.C.1989)(quoting *All Hawaii Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 649 (D.Haw.1987), *rev'd on oth. grds*, 855 F.2d 860 (9th Cir.1988), *vacated on oth. grds.*, 707 F.Supp. 3 (D.D.C. 1989))).

■ In this matter, defendant NYCHHC filed a Motion to Amend the

Judgment which was entered by this Court on August 18, 1998. Specifically, NYCHHC contends that the Judgment, which was limited to the issue of damages relating to the breach of the Agreement between the parties, should be amended to reflect a different allocation of money to Cityside with respect to the removal charges.

With regard to the removal charges, this Court held that Cityside would have received $14.75 per storage unit, plus $1.00 per storage unit in computer-related charges at the end of the storage term when the records were released. When the Court multiplied the number of storage units (2,327) by the aforementioned figures, the Court determined that Cityside was entitled to $36,650.25 in removal charges of the Pierce records.

NYCHHC contends that the damage award with respect to the removal charges

in favor of Cityside should be reduced by the amount of $11,778.13[1] because the present amount awarded to Cityside represents a "windfall" not permitted in a breach of contract action. More specifically, NYCHHC asserts that this Court's calculation of Cityside's damages did not take into account the fact that Cityside never paid Pierce Leahy's removal charges because Cityside never actually transferred the records stored with that vendor. NYCHHC argues that "since Cityside would have had to pay Pierce Leahy's removal charges before transferring those records, the Court's Judgment actually places Cityside in a better position than it would have been in had there been performance with respect to those records." *See* Brief in Support of NYCHHC's Motion to Amend Judgment.

NYCHHC calculated the $11,778.13 figure as follows:

| Quantity | Storage Unit | Price |
|---|---|---|
| (888) | 1 storage unit box/1.2 cubic feet = | $5.27 ea. |
| (79) | 2 storage unit boxes/2.4 cubic feet = | $10.02 ea. |
| (427) | 3 storage unit boxes/3.6 cubic feet = | $14.77 ea. |
| | Total: | $11,778.13 |

This Court is in agreement that the calculation with respect to the removal charges, as it is reflected in this Court's Judgment set forth in the August 18, 1998 Letter Opinion, constitutes a windfall to Cityside and does not take into account the fact that Cityside would have had to pay Pierce Leahy's removal charges before transferring those records. Accordingly, the amount awarded for removal charges

is $24,872.12. Thus, this Court's original Judgment totaling $92,989.12 is reduced by $11,778.13 to reflect a Judgment of **$81,-210.99** in Cityside's favor, prior to any award of attorney's fees.[2]

## II. Motion for Attorney's Fees

█ Generally, attorney's fees will not be awarded in a federal action unless: (1)

1. NYCHHC originally requested that this Court reduce the Judgment by $13,868.00. NYCHHC contended that the difference of $2,089.17 ($13,868.00 minus $11,778.13) was due to "related charges such as computer deletion and retrieval." *See* Letter authored by Eric Jewell, Esq., dated October 16, 1998. The Court, however, was not satisfied with the general explanation given for the $2,089.17 discrepancy and sought a further explanation from NYCHHC. When NYCHHC was asked to further explain the discrepancy in writing, NYCHHC instead opted to modify the amount sought to $11,778.13. This modification was memorialized in a letter to the Court.

2. The $81,210.99 figure includes $22,541.95 that this Court awarded Cityside in connection with the amount due for past billings which it alleged had not been satisfied by Lincoln. Thus, the amount actually recovered by Cityside only with respect to the Pierce records claim is $58,669.04.

Furthermore, Mr. Berkeley's contention, via his September 29, 1998 letter brief, that this Court awarded Cityside all of its permanent removal charges in the amount of $734,-548.47 is wholly misplaced. This Court's August 18, 1998 Letter Opinion provides as follows:

Cityside seeks $734,548.47 in permanent removal charges for the Lincoln records

a contract[3] expressly provides for the payment of attorney's fees; (2) a statute expressly provides for the allowance of attorney's fees;[4] (3) a "common benefit" is conferred by the recovery of a fund or property; (4) a party willfully disobeyed a court order; (5) the court makes a finding that the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Skehan v. Board of Trustees of Bloomsburg State College, et al.*, 538 F.2d 53, 56 (3d Cir.1976), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

In this matter, pursuant to paragraph 6.3 of the Storage and Service Agreement, Cityside is entitled to recover "all *reasonable* attorney's fees and costs incurred in connection with enforcement of this Agreement." (emphasis added). Accordingly, any award of attorney's fees in connection with this matter is authorized pursuant to the express terms of the contract.

A district court has broad discretion in awarding attorney's fees "so long as it 'employs correct standards and procedures and makes findings of fact [which are] not clearly erroneous.'" *Pennsylvania Environmental Defense Foundation v. Canon–McMillan School District*, 152 F.3d 228, 232 (3d Cir.1998) (citing *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1184 (3d Cir.1995) (quoting *Northeast Women's Center v. McMonagle*, 889 F.2d 466, 475 (3d Cir. 1989))). *See also Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991). In evaluating the proper amount of attorney's fees to award in certain cases, the Third Circuit most recently has been guided by the standards and procedures articulated in two United States Supreme Court cases, *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).[5] *Pennsylvania*

---

currently being stored at Cityside, claiming that the breach by Lincoln with respect to the Lincoln records was a material breach and the Agreement is therefore terminated. Cityside also claims that Lincoln's failure to timely pay its invoices was a default under the Agreement and that the termination charges are due and owing. **The Court disagrees...The breach with respect to the Pierce records was not a material breach of the Agreement...** The Pierce records were a very small part of the Agreement...Cityside continues to store records and will store them until the end of the Agreement, **at which time** it will be entitled to the permanent removal charges. (emphasis added).
*See* August 18, 1998 Letter Opinion.

3. Typically, "a contract which permits an aggrieved party to recover fixed or 'reasonable' attorney's fees as part of any damages is enforceable unless some larger public policy mandates a contrary result." *Center Grove Associates v. Hoerr*, 146 N.J.Super. 472, 474, 370 A.2d 55 (N.J.Super.Ct.App.Div.1977). Any fee arrangement, however, is subject to judicial review as to its reasonableness. *Id.*

4. Although this Court recognizes that Mr. Berkeley (on behalf of Cityside) "prevailed" on the limited issue of the Pierce records in the subject litigation, this Court would like to clarify that Cityside is not a "prevailing par-

ty" in the statutory sense of the familiar phrase. Thus, Mr. Berkeley's motion for attorney's fees will not be analyzed pursuant to Cityside's status as a "prevailing party" in light of any statute but as Cityside's entitlement to "reasonable" attorney's fees as set forth in the contract.

5. These standards also apply in non-civil rights cases involving attorney's fees authorized by both state and federal statutes, as well as, contracts executed pursuant to state law. *See e.g., Pennsylvania Environmental Defense Foundation v. Canon–McMillan School District*, 152 F.3d 228 (3d Cir.1998) (Clean Water Act); *Polselli v. Nationwide Mutual Fire Insurance Company*, 126 F.3d 524 (3d Cir.1997) (Pennsylvania state statute); *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) (Fair Debt Collection Practices Act); *Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3d Cir.1989) (civil RICO); *Orson, Inc. v. Miramax Film Corp.*, 14 F.Supp.2d 721 (E.D.Pa.1998) (Pennsylvania Feature Motion Picture Fair Business Practices Law); *Churchill v. Star Enterprises*, No. Civ. A. 97–3527, 1998 WL 254080 (E.D.Pa. April 17, 1998) (Family and Medical Leave Act); *Maiorino v. Schering–Plough Corporation*, Civ. A. No. UNN–L–3021–92, 1995 WL 405034 (N.J.Super.Ct.Law Div. June 16, 1995) (NJLAD).

Moreover, both 42 U.S.C. § 1988, the statute construed by the Supreme Court in *Hens-*

*Environmental Defense Foundation v. Canon–McMillan School District,* 152 F.3d 228, 231 (3d Cir.1998). In both cases, the Supreme Court adopted the "lodestar" formula, which requires multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id.*

■ The first step in applying the lodestar formula is to determine the appropriate hourly rate. In determining the appropriate hourly rate, the court should first consider the attorney's usual billing rate. *Id.* (citing *Public Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995)). The Supreme Court has indicated that the district court can also consider the "prevailing market rates" in the relevant community to assist in the determination of an appropriate hourly rate. *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

■ In this matter, Mr. Berkeley has indicated in his original Certification that the hourly rates charged were either $175.00, $225.00, or $275.00, depending upon the level of skill acquired by the attorney performing the work. *See* original Certification dated June 12, 1998, ¶ 4. Upon review of the hourly rates charged and in light of the relative market rates, this Court does not find that the hourly rates submitted are excessive.

■ In calculating the second part of the lodestar formula, the time reasonably expended, "[the district court] should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (citing *Public Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir.1995) (quoting *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933)). Time expended is considered "rea-

sonable" if the work performed was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 560–61, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

■ Once the lodestar formula has been applied and a calculation determined, the district court may then consider "the relationship between the degree of success and the amount of the award." *Pennsylvania Environmental Defense Foundation v. Canon–McMillan School District,* 152 F.3d 228, 231 (3d Cir.1998) (quoting *Public Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1190 (3d Cir.1995)). *See also Hensley v. Eckerhart,* 461 U.S. 424, 436–40, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (asserting that "the most critical factor [in the analysis of whether to award attorney's fees] is the degree of success obtained."). The *Hensley* Court opined that the award may be reduced when:

> . . . a plaintiff has achieved only partial or limited success, [since] the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

*Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. *See also Blakey v. Continental Airlines,* 2 F.Supp.2d 598, 605 (D.N.J.1998). The *Hensley* Court continued the analysis, and offered guidance to the district court on reducing an award of attorney's fees, when the Court stated that:

> [t]here is no precise rule or formula for making these determinations. *The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.* The court necessarily has discretion in making this

---

*ley,* and the Agreement presented in the matter at bar apply the same standard utilized by the Third Circuit and New Jersey state courts

in evaluating the amount of attorney's fees to award, that is, the "reasonableness" standard.

equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified. *Id.* at 436–37, 103 S.Ct. 1933 (emphasis added). *But see Northeast Women's Center v. McMonagle,* 889 F.2d 466 (3d Cir. 1989) (rejecting a "rule of proportionality").

The *Hensley* Court also noted that a district court also may reduce a fee award when "the documentation of hours is inadequate." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Emphasizing that the attorney seeking to be awarded fees has the burden of establishing the entitlement to an award and, therefore, documenting the appropriate hours expended and the hourly rates, the Court asserted that the attorney "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id. See also Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

■ Thus, so long as the district court makes it clear that it has considered the relationship between the amount of the fee awarded and the results obtained, the decision to reduce an award for attorney's fees is appropriate, especially "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440, 103 S.Ct. 1933.

■ In the present matter, the now-weary Court is faced with the task of reviewing the two-inches thick mass of paper Mr. Berkeley has submitted to the Court to determine whether the hours set out were reasonably expended for each of the particular purposes described. If this Court were to complete the lodestar formula and calculate the amount of attorney's fees based upon the documents forwarded by Mr. Berkeley to this Court, without reducing the amount in any way, the amount sought would be in excess of $630,703.40. Although Mr. Berkeley ob-tained a total award of $58,669.04 solely in connection with the one successful claim, the Pierce records claim, he requests that this Court award him an amount in excess of $630,703.40.[6] However, let the record be clear on this point this Court is not willing to award Mr. Berkeley $630,703.40 in attorney's fees. This Court's reasoning for not awarding Mr. Berkeley the requested amount is set forth herein.

The *only* claim upon which Mr. Berkeley actually prevailed in this simple breach of contract case was the Pierce records claim. In this Court's September 9, 1997 Letter Opinion addressing the liability of defendants, this Court concluded that Cityside did not prevail on the *principal* part of the litigation, namely, the storage of the Lincoln x-ray records and the lost profits associated with that claim, because the x-ray records simply were not included as part of the Agreement between Cityside and Lincoln.

More specifically, this Court first noted that neither the offer, Cityside's bid, nor the acceptance by Lincoln's representative which resulted in the Agreement, indicated a charge for the storage of x-ray records. In fact, Cityside's Senior Vice President, Scott Coburn, testified at trial that the bid submitted by Cityside did *not* include a proposed charge for x-ray storage or for any of the services specified in the Radiology Department of the RFP. TR 54:8–14.[7] Mr. Coburn also testified that the bid was not a "blended bid" which would have averaged the x-ray storage price and the paper storage price to total a median "per box" price. *Id.* Accordingly, this Court reasoned that, particularly, because Cityside failed to make an offer with regard to the price for the storage of the x-rays, "the first element of basic contract construction is missing." *See* September 9, 1997 Letter Opinion, page 9. The Court also noted that since the RFP specifically included information dealing with x-rays storage, it was

---

6. *See supra,* n. 2.

7. "TR" refers to the transcripts of the proceedings which took place on June 25, 26 and 27 and July 7, 1997.

declining to accept Cityside's argument that the Agreement was ambiguous on the ground that it did not include information about the x-rays. As noted in this Court's Opinion, the RFP was merely a request for an offer and not the actual offer.

This Court also examined the terms of the Agreement. When this Court reviewed Schedule B, Section 3 of the Agreement, entitled "Storage and Service Charges," the Court noted that there was no mention of x-ray storage and, therefore, no agreement with regard to that issue. Cityside's position was its reliance upon an antecedent oral promise to amend or alter the Agreement by Mr. Coburn that Lincoln would "negotiate what the terms and conditions and pricing were going to be on the x-rays." In response to Cityside's argument that it did not include a price for x-ray storage because it was going to negotiate the term later, the Court reasoned that such an act simply defied common sense in light of the fact that the RFP requested a price for x-ray storage. The Court also did not adopt Cityside's argument that Cityside did not include a bid for x-rays because it was concerned that its bid would be discarded since Cityside's actions "belied" their contention when it attached an addendum to the bid excluding any terms regarding x-ray storage. *See* September 9, 1997 Letter Opinion. Finally, this Court found that language which was ultimately included in the Agreement militated against finding in favor of Cityside.

This Court also rejected Cityside's argument that it was fraudulently induced into entering into the Agreement with Lincoln and that, therefore, parol evidence is admissible to prove fraud. Relying upon Mr. Befi's, the former Associate Executive Director of Materials Management at Lincoln, statement that he informed M. Coburn that x-ray storage was no longer being sought, this Court found that Lincoln's representatives did not make any intimations about negotiating x-rays at a later date.

As demonstrated above, Cityside was quite unsuccessful in arguing that it was entitled to damages in connection with the *principal* part of the litigation, namely, the storage of the x-ray records and the lost profits associated with that claim. However, the absurdity with which Mr. Berkeley contends he is entitled to $630,703.40 does not end with the foregoing analysis. In fact, throughout the litigation, Mr. Berkeley, on behalf of Cityside, did not prevail on other many other issues, including, but not limited to: (1) the claim that Lincoln, due to alleged favoritism, awarded x-ray storage to SK, Inc., even though the Court found this claim to be completely irrelevant to any rights asserted by Cityside under the Agreement or to any liabilities on defendants' part as to Cityside; (2) the claim for a rate increase of 80%, unilaterally imposed by Cityside; (3) the claim for interest on late payments; (4) the claim that the Agreement was terminated prior to its stated expiration date; (5) the claim for punitive damages; (6) the claim for sanctions; (7) the motion to enjoin NYCHHC from maintaining the New York action; (8) the motion to enjoin the publication of a notice of the pendency of the New York action with the New York City Vendex System; (9) Cityside's motion to lift the stay imposed by this Court in the conspiracy action; and (10) the unpleaded claim that NYCHHC wrongfully refused to award Cityside a contract for the storage of magnetic media from its central offices.

Finally, a review of the allegations set forth in the original Complaint indicates that Cityside was unsuccessful on all Counts averred in the Complaint, particularly: (1) specific performance; (2) breach of contract; (3) fraud; (4) breach of covenant of good faith and fair dealing; (5) tortious interference with contract; and (6) various counts seeking $382,879.96 in "past due rent, current rent, rent to the end of the term and permanent removal charges." *See* Complaint filed November 13, 1995.

In light of the foregoing, it is clear that this case was, in large part, about the

Lincoln x-ray records. Although the aforementioned is only a mere summary of the arguments proffered by Cityside which were rejected by this Court, it is clear that most of the litigation centered upon the Lincoln x-ray storage. The Pierce records claim, upon which Mr. Berkeley prevailed, was such a small part of the entire litigation that the Court's decision afforded this claim only *one* paragraph in its decision. The Court, quite simply, concluded that since it was undisputed that Lincoln owed money to Pierce, Pierce was well within its right to continue holding documents, and, therefore, not turn over documents to Cityside, until its outstanding invoices were paid. Accordingly, this Court concluded that because Lincoln had not documented any payment of the "admittedly outstanding" invoices, the Court found that Lincoln breached the Agreement between the parties *only* with respect to those documents stored at Pierce. *See* September 9, 1997, page 12.

Based upon the Court's firsthand knowledge of the facts, issues, and arguments which were before this Court for a mere four-day trial, and the fact that Mr. Berkeley has achieved only limited success in this case as demonstrated above, this Court is simply unwilling to grant Mr. Berkeley's request.

As the *Hensley* Court has indicated, the district court may reduce the award for attorney's fees "even where the plaintiff's claims were interrelated." *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. To the extent that this Court found that the Agreement was enforceable, the finding clearly was incidental to the Court's conclusion that defendants breached the Agreement only with regard to the Pierce records. Thus, Mr. Berkeley's repetitive claim that he simply cannot parse through the materials and identify the work in connection with the Pierce claim because the claims are indivisible does not preclude this Court from exercising the power of reduction.

This Court also finds that the documentation provided to the Court by Mr. Berkeley is wholly inadequate and entirely unacceptable. Despite the fact that this Court has asked Mr. Berkeley on several occasions to parse through these documents and submit *only* those fees with respect to the Pierce records, he has refused to do so, as set forth more specifically in the aforementioned statement of facts. The time records which were submitted by Mr. Berkeley make it impossible for this Court to identify and separate the Pierce records claim from the other claims (since the work performed in connection with the Pierce records are not labeled) which were not before this Court.

Accordingly, upon consideration of the relationship between the amount of the fee awarded and the results obtained, this Court finds that the amount of hours requested by Mr. Berkeley are clearly excessive and do not warrant an award in excess of $630,703.40. Since the *Hensley* Court noted that a mathematical formula is not necessary to determine the amount of attorney's fees to be awarded and that a court may exercise its discretion and reduce the award to account for the limited success so long as the Court has proffered an explanation for the reduction, this Court will not award Mr. Berkeley the full amount of attorney's fees. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *see also Graziano v. Harrison,* 950 F.2d 107, 114 (3d Cir.1991) (holding that, in a Fair Debt Collection Practices Act case, a Court should consider the "substantial Supreme Court precedent" concerning the calculation of reasonable attorney's fees).[8]

---

**8.** Clearly, there is no uniform percentage figure applied by courts faced with the task of fashioning a final award for attorney's fees. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 88 (2d Cir.1998) (indicating that a 90% reduction in attorney's fee award in a Fair Debt Collection Practices Act case may have been acceptable had the district court judge provided specific reasons for its calculation of attorney's fees); *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 630 (4th Cir.1995) (affirming a 95% reduction in attorney's fee award in a Fair Debt Collection Practices Act because of the small amount of success in the

For all of the foregoing reasons, this Court will award Mr. Berkeley 33⅓% of the entire amount recovered by Cityside. The Court has arrived at this percentage based upon the Court's preference to utilize a figure typically charged by attorneys in collection fee cases. Thus, Mr. Berkeley will be awarded 33⅓% of the total amount recovered which, as aforementioned, is $81,210.99, to reflect a total amount of $27,070.33, including costs.

### CONCLUSION

In conclusion, defendant New York City Health and Hospitals Corporation's Motion to Amend the Judgment is **GRANTED.** Additionally, counsel of record for plaintiff Cityside Archives, Ltd.'s Motion for Attorney's Fees is **GRANTED IN PART AND DENIED IN PART.** Finally, counsel of record for plaintiff Cityside Archives, Ltd.'s Motion to be Relieved as Counsel is **DISMISSED AS MOOT.**[9]

An appropriate Order and Final Judgment accompanies this Letter Opinion.

### ORDER

This matter having come before the Court on counsel of record for plaintiff Cityside Archives, Ltd.'s, motion to be relieved as counsel; and this Court having heard oral argument on October 29, 1998; and after careful consideration of the memoranda submitted by both parties; and upon good cause having been shown;

**IT IS** on this 3rd day of March, 1999,

**ORDERED** that counsel of record for plaintiff Cityside Archives, Ltd.'s motion to be relieved as counsel is **DISMISSED AS MOOT.**

### FINAL JUDGMENT

**THIS MATTER** having come before the Court on two separate motions, namely: (1) Defendant New York City Health and Hospitals Corporation's motion to amend the judgment entered on August 18, 1998 by this Court; and (2) counsel of record for plaintiff Cityside Archives, Ltd.'s motion for attorney's fees; and this Court having heard oral argument on October 29, 1998; and after careful consideration of the memoranda submitted by both parties; and upon good cause having been shown,

**IT IS** on this 3rd day of March, 1999,

**ORDERED** that defendant New York City Health and Hospitals Corporation's motion to amend the judgment is **GRANTED;** and it is further

**ORDERED** that counsel of record for plaintiff Cityside Archives, Ltd.'s motion for attorneys' fees is **GRANTED IN PART AND DENIED IN PART;** and it is further

**ORDERED** that Cityside is entitled to storage charges in the amount of $30,157.92, it is further

**ORDERED** that Cityside is entitled to removal charges in the amount of $24,872.12, it is further

---

underlying litigation); *Riordan v. Nationwide Mutual Fire Insurance Company,* 977 F.2d 47, 54 (2d Cir.1992) (construing a New York state statute, Circuit Court affirmed district court's decision to limit the amount of an attorney's fee award to one-half of the total amount of damages awarded); *Norton v. Wilshire Credit Corp.,* 36 F.Supp.2d 216, 220 (N.J.1999) (reducing final award in a Fair Debt Collection Practices Act case by 5% to reflect the partial success of plaintiff's claim).

9. For the following reasons, this Court is also denying Mr. Berkeley's request to appoint a special master to address the issue of attorney's fees: (1) this Court is unwilling to create a trial within a trial; (2) if this Court were to appoint a special master in this case, the Court would be rewarding Mr. Berkeley for his failure to obey this Court's order to submit the proper materials; (3) there is a legitimate question as to whether this Court can actually appoint a special master in a non-complex case such as the present one; (4) the Court is reluctant to compel one party to pay for the cost of a special master when all parties have not consented; and (5) the appointing of a special master will further prolong a final resolution to this matter.

**ORDERED** that Cityside is entitled to actual activity charges in the amount of $3,639.00, it is further

**ORDERED** that Cityside is entitled to an amount of $22,541.95 for past billings, it is further

**ORDERED** that counsel of record for Cityside, Mr. Leonard Berkeley, is entitled to recover attorney's fees in the amount of $27,070.33, it is further

**ORDERED** that this case is closed.