683 F.2d 62
 Fed. Sec. L. Rep. P 98,730
Joseph SILBERMAN, individually and on behalf of all other
shareholders of Wellington Fund, Inc. and all
other persons similarly situated
v.
John C. BOGLE, Robert W. Doran, Paul B. Firstenberg, Daniel
S. Gregory, Barbara B. Hauptfuhrer, John T. Jackson, John
Jeppson, III, Charles D. Root, Jr., James O. Welch, Jr.,
Burton G. Malkiel, James S. Riepe, Raymond J. Klapinsky,
Richard F. Hyland,
Wilmington Trust Company, Executor of the Estate of Richard F. Corroon,
Dorothy Helen Hill and Citibank, N.A., Executors of the
Estate of James T. Hill, Jr.
The Vanguard Group, Inc., Vanguard Marketing Corporation,
Wellington Management Company and The Wellington Fund, Inc.
and Windsor Fund, Inc., Ivest Fund, Inc., Explorer Fund,
Inc., W. L. Morgan Growth Fund, Inc., Wellesley Income Fund,
Inc., Westminster Bond Fund, Inc., Whitehall Money Market
Trust, Qualified Dividend Portfolio, Inc., Qualified
Dividend Portfolio II, Inc., First Index Investment Trust,
and Warwick Municipal Bond Fund, Inc., Plaintiff, Joseph
Silberman and Fred Lowenschuss Associates, Counsel for
Plaintiff Above-named, Appellants.
 No. 81-2966.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) June 14, 1982.
Decided June 28, 1982.
 
 Fred Lowenschuss Associates, Philadelphia, Pa., for appellants; Fred Lowenschuss, William D. Parry, Philadelphia, Pa., of counsel.
 Fred C. Aldridge, Jr., William G. Scarborough, Carol M. York, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellee, Wellington Fund, Inc.
 Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Joseph Silberman and his counsel appeal from an order awarding attorneys' fees and expenses in connection with the settlement of a shareholders derivative suit and related proceedings before the SEC.[1] They contend that the amount of the award is inadequate. We affirm.
 
 I.
 
 2
 Wellington Fund, Inc. (Wellington), an open-end mutual fund, is a member of the Vanguard Group of Investment Companies (Vanguard Funds), a mutual fund complex. The Wellington Management Company (WMCo.) is Wellington's investment adviser and The Vanguard Group, Inc. (Vanguard) provides it with administrative services. Plaintiff, Joseph Silberman, is a shareholder of Wellington. He has been represented in this action and related SEC proceedings by Fred Lowenschuss Associates.
 
 
 3
 In February 1977, Vanguard Fund applied to the Securities Exchange Commission (SEC) pursuant to the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq., for approvals and exemptions of a change in the manner of distributing shares of member funds. The SEC gave temporary approval to the proposed arrangement and ordered a full hearing. Silberman, who had earlier requested the SEC to hold public hearings on Vanguard Funds' application, intervened in the SEC proceeding as a limited participant under SEC Rule of Practice 9(c), 17 C.F.R. § 201.9(c). He was denied full party status. After extensive hearings an administrative law judge found Vanguard Funds' formula for allocating costs among the various funds unfair to Wellington, but approved a revised formula. The full Commission, in an order dated February 25, 1981, approved the decision of the administrative law judge. In the interim, Wellington had negotiated with WMCo. for a prospective advisory fee reduction of approximately $450,000 to $500,000.
 
 
 4
 This shareholders derivative action was instituted on October 31, 1977 against a number of defendants including Wellington, its principal officers and directors, Vanguard, WMCo. and 12 investment company members of Vanguard Funds.[2] Silberman alleged that the various defendants had violated fiduciary obligations to Wellington, that the Wellington shareholders' approval of the distribution arrangement was unlawful because it was procured by a false and misleading proxy statement, and that the proposed distribution arrangement was unlawful and unfair.[3] He initially sought to enjoin Wellington, its officers and directors, from participating in Vanguard Funds' plan and from being represented before the SEC by the same counsel representing the other funds. Upon the district court's refusal to issue an injunction and the SEC's approval of Vanguard Funds' modified plan, Silberman amended his complaint to seek reimbursement for legal fees and expenses incurred in the SEC proceedings. The amended complaint thus requested relief in the form of an injunction, damages, and attorneys' fees.
 
 
 5
 Settlement discussions resulted in a court approved settlement in which Wellington received $200,000 from its insurance carrier, as well as reimbursements of attorneys' fees, costs and expenses incurred in defending this action, $50,000 from WMCo., and the right to receive $20,000 a year from WMCo. for the next ten years.[4] Consequently the derivative action was dismissed with prejudice on October 17, 1980.
 
 
 6
 Soon thereafter plaintiff's counsel filed an application for attorneys' fees and expenses totaling $579,420.12. After a hearing, the court awarded $85,000.50 in fees and $3,469.23 in expenses. Silberman and his counsel appeal from that determination. They contend that the court erred in not compensating counsel for time and effort spent in the SEC proceedings. They also contend that the court should have increased the fee award because of the contingent nature of counsel's work and the high quality of their performance. Finally, they contend that the court erred in refusing to reopen the hearing to accept evidence of a more detailed breakdown of the hours spent jointly on both the SEC proceeding and this litigation.
 
 II.
 
 7
 The generally applicable American rule is that litigants bear their own legal costs and expenses. Federal courts, however, have had the "historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). See, e.g., Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882). As we stated in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp. (Lindy I), 487 F.2d 161, 165 (3d Cir. 1973): "(T)he award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions (in commencing, pursuing or settling litigation) benefited another and seeks payment for the value of the service performed."
 
 
 8
 We have set forth the standards governing the award of attorneys' fees in Lindy I and Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (Lindy II ). A district court must first inquire into the hours spent by the attorneys on their services and value those services by multiplying the hours billed by a reasonable hourly rate. This amount constitutes "the lodestar of the court's fee determination, (to be modified by) at least two factors that must be taken into account." Lindy I, supra, 487 F.2d at 168. One factor is the contingent nature of success which may increase the recovery. The second factor is "the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled." Id. at 168. Such an increase or decrease is intended to take into account only an unusual degree of skill, superior or inferior, exhibited by counsel in the specific case before the court. The general quality of the attorney's practice and reputation is not to be considered in setting this factor, but enters instead into the determination of the reasonable hourly rate. Moreover, while a district court is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him, a hearing must be held if factual determinations are needed.
 
 
 9
 Within the aforesaid parameters, an award of reasonable attorneys' fees is within the district court's discretion. Lindy II, supra, 540 F.2d at 115; Merola v. Atlantic Richfield Co., 493 F.2d 292, 295 (3d Cir. 1974). Thus our standard of review is a narrow one. We can find an abuse of discretion if no reasonable man would adopt the district court's view. "If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Lindy II, supra, 540 F.2d at 115, quoting Delno v. Market St. Ry., 124 F.2d 965, 967 (9th Cir. 1942). We may also find an abuse of discretion when the trial court uses improper standards or procedures in determining fees, or if he does not properly identify the criteria used for such determination. Factual findings, of course, are subject to the clearly erroneous standard of review. See Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972).
 
 
 10
 Silberman and his counsel claim that the district court erred in excluding from his fee determination the time and effort spent by counsel in the SEC proceedings. That exclusion presents a question of law, as to which our review is plenary, since it involves the categories of services included in the lodestar determination.
 
 
 11
 We hold that the district court ruled correctly. This court has not previously ruled on the question whether the equitable fund doctrine permits an award of counsel fees for participation in an SEC proceeding. Silberman and his attorneys urge that an equitable fund was enhanced because of the favorable ruling of the SEC, which their efforts were instrumental in producing. The same contention was made in Grace v. Ludwig, 484 F.2d 1262 (2d Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1610, 40 L.Ed.2d 110 (1974). In that case attorneys for shareholders of a corporation participated in an SEC proceeding. Indeed, according to them, they pulled the laboring oar. In rejecting a fee application for services before the SEC the court accepted the allegation that the attorneys pulled the laboring oar, but reasoned, nevertheless:
 
 
 12
 We cannot accept, however, the premise that but for (the attorneys') intervention the SEC would have approved as "fair and reasonable" the initial (challenged) offer of Brekshire. If (the attorneys) had never appeared how can we possibly assume that the SEC would have been so totally supine or so derelict as to give its approval to a price which plaintiffs urge was not merely unconscionably low but was in fact the product of a deception and fraud practiced by (defendants)?
 
 
 13
 484 F.2d at 1268. The court held that private attorneys should not be awarded compensation on an equitable fund theory for proceedings before the SEC in which the Commission had affirmative enforcement obligations, unless they established that but for their participation the benefit to the fund resulting from the SEC ruling would not have accrued. That holding is consistent with the decision of this court in Thomas v. Honeybrook Mines, Inc., 428 F.2d 981 (3d Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971), holding that attorneys for a coal miners' committee could recover fees for their services in forcing trustees of a fund to commence lawsuits which the trustees were previously unwilling to undertake. See also Powell v. Pennsylvania Railroad Co., 267 F.2d 241 (3d Cir. 1959). On the record before us, Silberman and his attorney have not shown that the SEC decision would have been less favorable to the fund but for their participation. It would require a considerable extension of the equitable fund doctrine to award fees absent such a showing. Moreover, a rule allowing recovery of fees for participation in SEC proceedings as a volunteer, upon a lesser showing of benefit than required by the Grace v. Ludwig court, could well have detrimental effects upon the efficient disposition of proceedings before that agency. As the Second Circuit observed, "(t)he competition and maneuvering among counsel to assume the lead role would not only be disruptive of administrative procedures but might very well encourage agency inaction." 484 F.2d at 1271.
 
 
 14
 We hold, therefore, that the court did not err in excluding time spent by counsel in the SEC proceedings from the lodestar determination. We reject as well the contention that the defendants agreed in the settlement to reimburse Silberman for fees incurred by him in those proceedings. The stipulation of settlement plainly reserves the right to oppose any fee application.
 
 III.
 
 15
 In calculating the attorneys' fees incurred in the litigation, the court followed the procedures and applied the considerations set forth in Lindy I and Lindy II. Its computation of the lodestar was proper. The factual findings as to the hours logged by plaintiff's counsel were not clearly erroneous, and the assessment of reasonable hourly rates was well within the ambit of the court's competence. The court also examined in detail the contingency factor and the quality of counsel's performance in the litigation. It found neither sufficient to increase the lodestar. As to the contingency of success, the court determined that major issues in the litigation were resolved in the SEC hearings and by defendants' voluntary change in management policy. The court found that the defendants had unilaterally reduced Wellington's advisory fees. Appellants argue that the reductions were due to their efforts. The court's contrary determination is not clearly erroneous. As to the quality of counsel's representation, the court found no unusually high or low degree of skill. The settlement yielded $600,000 for Wellington, far less than Silberman's estimates of tens of millions of dollars. The main benefits to Wellington accrued as a result of defendants' independent reduction of advisory fees. Examining the court's careful analysis of the factors considered and reasoning on the record, we find no abuse of discretion.
 
 IV.
 
 16
 Silberman and his counsel contend, finally, that the court erred in denying their post-judgment motion to reopen the record so that they could offer in evidence a breakdown of time entries, indicating in greater detail services spent on the litigation rather than the SEC proceedings. The proposed evidence is in no sense newly discovered. The court did not mislead counsel in any way which might suggest that such evidence was unnecessary in the case in chief. Denial of a motion to reopen was not an abuse of discretion.
 
 V.
 
 17
 The judgment appealed from will be affirmed in all respects.
 
 
 
 [1]
 The court also dismissed counsel's motion for rehearing and to alter and amend the findings and judgment regarding the fee application
 
 
 [2]
 Some of these defendants were added subsequent to October 31, 1977
 
 
 [3]
 Silberman also alleged violation of various provisions of the Investment Company Act and rules promulgated thereunder
 
 
 [4]
 The Stipulation of Settlement indicates that Lowenschuss intended to apply for attorneys' fees in connection with the SEC proceedings and the litigation (App. 122a) and that Wellington specifically reserved the right to oppose any such application. The Stipulation also provides that:
 
 
 [8]
 Neither this Stipulation, nor evidence of any negotiation or proceedings in pursuance of the settlement and compromise agreed to herein, shall be offered or received in evidence, or be admissible at any trial of the above-entitled actions or any other action or proceeding except to enforce the terms and provisions hereof. (App. 122a, P 8)