NYGAARD, Circuit Judge,
dissenting.
Although I agree with the Majority’s holding that the Barnes Foundation’s claims against the neighbors were not frivolous, I disagree that the Foundation’s claims were factually groundless. I would affirm the District Court because its factual findings support its conclusion that the Foundation had a reasonable factual basis for bringing its § 1985 claims. The decision made by the District Court was discretionary and mere disagreement with the lower court’s decision is insufficient to overcome the substantial discretion the District Court has traditionally enjoyed. I fear the Majority elides our deferential posture when reviewing for an abuse of discretion and crosses the line that limits our interference with a District Court’s decision under an abuse of discretion standard. Accordingly, I dissent.
Before focusing on the District Court’s factual findings and why I find them sufficient to defeat the neighbors’ argument that the Foundation’s claims were not groundless, a review of our abuse of discretion standard for reviewing attorney’s fees is instructive. We have a long and well-established history of deferring to a District Court’s award of attorney’s fees. As we have often said, “the award of a reasonable attorney’s fee is within the District Court’s discretion.” Silberman v. Bogle, 683 F.2d 62, 64-65 (3d Cir.1982); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 *167 F.2d 102, 115 (3d Cir.1976). Thus, as with any issue reviewed for abuse of discretion, our standard of review is narrow. See Sil-berman, 683 F.2d at 65. We will reverse only when the “judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used.” Evans v. Buchanan, 555 F.2d 373, 378-79 (3d Cir.1977). Stated differently, discretion is abused only where “no reasonable [person] would take the view adopted by the trial court.” Lindy, 540 F.2d at 115. If, however, reasonable persons could differ as to the propriety of the challenged action, then it cannot be said that the trial court abused its discretion. See id.
Moreover, our task on review “is not to substitute the remedy [we] would have imposed had [we] been the district court; rather it is to determine whether the district court observed the promulgated guidelines.” Evans, 555 F.2d at 379. An abuse of discretion does not exist simply because we disagree with the District Court’s decision. See Lindy, 540 F.2d at 116.
We have vested the District Courts with discretionary authority for good reason. The District Court has the distinct advantage of hearing and seeing evidence and testimony first-hand and has viewed the parties and the cause over a longer time period. As one commentator remarked,
[i]t is not that [the trial judge] knows more than his loftier brothers; rather, he sees more and senses more. In the dialogue between the appellate judges and the trial judge, the former often seem to be saying: ‘You were there. We do not think we would have done what you did, but we were not present and we may be unaware of significant matters, for the record does not adequately convey to us all that went on at the trial. Therefore, we defer to you.’
Maurice Rosenberg, Judicial Discretion of the Trial Court, Viewed From Above, 22 SYRACUSE L. Rev. 635, 663 (1971). Given the trial court’s proximity to the issues, it is eminently appropriate that “[o]ne seeking to establish [ ] an abuse of discretion bears a heavy burden.” Lindy, 540 F.2d at 116.
I heartily agree with our esteemed colleague, Judge Aldisert, who, in an earlier fee case, said:
At bottom, this case is about whether an appellate court appreciates the allocation of competence between trial courts and reviewing courts. To be sure, statements of deference by appellate courts to district courts appear in this court’s dispositions.... But quoting a standard of review and respecting it are different matters.... We must be vigilant of this court’s increasing proclivity to deny substituting its judgment for that of the district court, but then to proceed with the tack that it expressly renounces.
Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1044 (3d Cir.1996). Moreover, I identify fully with what he referred to as “a personal expression of what troubles me”:
Appellate courts seem to have lost respect for the narrow review encompassed in reviewing an exercise of discretion.
... Instead of playing a limited role in the determination of attorney’s fees in limited review of discretion, the appellate courts, like the proverbial camel, have not only stuck their noses under the district court’s tent, but they are fully inside ranging around in the turf that properly belongs to the district courts.
Id. at 1048. Judge Aldisert was dissenting from an opinion I had joined. But, I was as wrong then as I believe the majority is now. “Abuse” itself is a serious accusation and in using the term “abuse” to define our standard of review, our jurisprudence has recognized the institutional superiority of the District Court. Therefore, we should not readily discard its findings and conclusions.
*168 A prevailing defendant seeking an award of attorney’s fees carries an even heavier burden than a typical litigant trying to prove an abuse of discretion in another context. It is imperative that we use the utmost restraint in awarding attorney’s fees to prevailing defendants, lest the award discourage novel or unpopular litigation, stifle attorneys’ enthusiasm and creativity, and chill citizens’ constitutional right to meaningful access to the courts. See, e.g., Thomas v. Capital Sec. Serv., Inc., 836 F.2d 866, 885 (5th Cir.1988) (warning that overuse of Rule 11 sanctions may “chill attorney’s enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories”); Thomas D. Rowe, The Legal Theory of Attorney Fee Shifting: A Critical Overview, 1982 Duke L.J. 651, 661 (1982) (arguing that fee shifting should not “deter good-faith pressing of tenable but not clear-cut claims and defenses, especially those turning on unresolved points of law or, in many instances, genuinely controverted factual disputes”); Eric Y. Yamamoto, Efficiency’s Threat to the Value of Accessible CouHs for Minorities, 25 HaRV. C.R.-C.L. L. Rev. 341, 429 n. 180 (1990) (arguing that the Supreme Court “curbed the [Civil Rights Attorney’s Fees Awards] Act’s impact on access [to the courts] by authorizing payment of fees to prevailing defendants where the plaintiffs claim is ‘unreasonable’ even though not made in bad faith”). Because of these concerns, awards of attorney’s fees to prevailing defendants should be made sparingly and in only the most egregious cases. In my view, the present case does not meet this stringent standard.
In contrast to the Majority, I believe that the District Court’s factual findings are sufficient to meet the legal threshold for allegations of racial animus on the part of the neighborhood association and the six neighbors (Ina Asher, Steven Asher, Nancy Herman, Walter Herman, Robert Mar-mon and Toby Marmon), all of whom are Caucasian. See Appellee’s Br. at 4, 6. With respect to the association, the District Court noted that during a Commissioner’s meeting, Robert Marmon, one of the association’s creators, coordinators, and spokespersons, made racially disparaging remarks about the Barnes Foundation. Specifically, Mr. Marmon repeatedly referred to the Foundation’s members as “Mr. Glanton and his people,” a paradigmatic reference to African-Americans, and then called them “carpetbaggers” and “outsiders.” Given Mr. Marmon’s leadership role, it was reasonable to believe that his racial animus represented the views of the association. Additionally, the neighbor hood association’s lack of opposition to other institutions with parking and traffic needs similar to the Barnes Foundation further evidences a racially discriminatory motive.
Other facts in evidence also support the Foundation’s allegations. For example, the District Court noted the affidavit of Thomas Massaro, a land use consultant, who opined that the neighbors were so irrationally and firmly opposed to the Foundation’s proposal that it suggested their concerns were a pretext for racial prejudice. These attitudes could also suggest the same to the Foundation and the District Court. The Foundation also noted in its complaint that, along with other persons, appellants Ina Asher, Walter Herman, Robert Mar mon, and Toby Marmon congregated and picketed outside the Foundation during its opening gala event. Several of the picketers were observed holding signs that read, “From LA to PA, Money Buys Justice” and “Lincoln University — Go Home.” Mr. and Mrs. Marmon stood in the midst of traffic flow with their video cameras, shining the camera’s lights into the cars pulling in for the opening event. Even if the defendants were not personally holding the racially derogatory signs, they protested alongside others who were. This provided the Foundation with a reasonable inference that the defendants sought to promote a message charged with racial overtones. Far from arbitrary or fanciful, these facts, which are undisputed, suggest the District Court had a reason *169 able basis for holding that the Foundation’s allegations of racial animus were not factually groundless.
I fear that the Majority affords too little attention to our long-standing principles governing the abuse of discretion standard and too easily discounts the findings of racial hostility. Today, racially motivated conduct is rarely blatant and easily discernible. Persons acting with racial animus have become more sophisticated in disguising their motivations. Although discrimination cases rarely contain an evidentiary “smoking gun,” this does not mean that racial animosity does not exist. As we earlier explained,
[a]nti-discrimination laws and lawsuits have ‘educated’ would-be violators such that extreme manifestations of discrimination are thankfully rare. The sophisticated would-be violator has made our job a little more difficult. Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and ‘a plaintiffs ability to prove discrimination indirectly, circumstantially, must not be crippled ... because of crabbed notions of relevance or excessive mistrust of juries.’
Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081-82 (3d Cir.1996) (citing Riordan v. Kempiners, 831 F.2d 690, 697 (7th Cir.1987)). In light of this reality, I believe the District Court’s reliance on circumstantial evidence and its conclusion that the Barnes’s claims had at least the threshold quantum of factual support was reasonable and well within its discretion.
Finally, I also disagree with the Majority’s reversal of the neighbors’ bad faith claim. The Majority reverses the bad faith claim because the District Court made no mention of this argument. Thus, the Majority concluded that it “was not able to say that the district court rejected [it].” Maj. Op. at 166. In reversing the bad faith claim, the Majority cites Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 196-97 (3d Cir.2000), wherein we stated that a District Court must explain its reasoning and application of the fee-awards jurisprudence to allow adequate review by an appellate court. However, we have also assumed that a District Court has considered or weighed an argument, even when it has failed to discuss the argument in its decision. See Acosta v. Honda Motor Co., Ltd., 717 F.2d 828, 844 (3d Cir.1987) (assuming that the District Court weighed the amount of plaintiffs recovery as a factor in a fee award even though the District Court did not state that it was doing so). .Therefore, the District Court’s failure to discuss the bad faith claim does not necessarily imply that it overlooked or ignored it.
In summation, jurisprudence has reposed in the District Court great discretionary power in fee cases. We must respect it. For these reasons, I strenuously dissent.