

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2006

# Taylor v. USF Red Star Express

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2063

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Taylor v. USF Red Star Express" (2006). *2006 Decisions.* Paper 54.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/54

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-2063, 05-2487, 05-2566 & 05-3081

EDWIN TAYLOR,
              Appellant at No. 05-2566

v.

USF-RED STAR EXPRESS, INC.,
              Appellant at Nos. 05-2063,
                          05-2487 & 05-3081

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-2216
(Honorable Clarence C. Newcomer)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 2006
Before: SCIRICA, *Chief Judge*, BARRY and ALDISERT, *Circuit Judges*

(Filed:  December 21, 2006)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

    USF-Red Star, Inc. appeals the District Court's entry of final judgment in favor of

Edwin B. Taylor in a discrimination suit brought under the Americans with Disabilities

Act, 42 U.S.C. §§ 12,101–213 (2000), as well as the denial of its post-trial motion for

judgment as a matter of law or a new trial. Red Star also appeals the District Court's award of attorney's fees as legally erroneous and an abuse of discretion. Taylor cross-appeals the District Court's reduction of certain hours in his attorney's fees award as an abuse of discretion. We will affirm.

## I. Facts and Procedural History

Red Star employed Taylor as a combination truck driver/dockworker at its Philadelphia terminal. On March 1, 2001, Taylor was hospitalized after suffering two seizures, possibly attributable to use of the nutritional supplement creatine, that temporarily rendered him unconscious and unable to control himself. His treating physician, Dr. Eduardo Enriquez, instructed him not to drive or operate hazardous machinery. A neurologist, Dr. Karen Scardigli, on March 14, 2001, interpreted Taylor's MRI as consistent with a seizure disorder. Taylor returned to work and drove a forklift on March 12, 2001, but told Red Star terminal manager Barry Saylor he was unable to drive a truck. On March 15, 2001, Taylor informed Saylor of his seizures and, Red Star contends, told him he had been diagnosed with "infantile epilepsy." Saylor told Taylor not to return to work until Red Star received information from his doctor that he could safely operate a forklift.

Over the next eighteen months, several physicians evaluated Taylor's condition and ability to operate a forklift. Dr. Scardigli initially told Red Star around March 20, 2001, that Taylor could return to operating a forklift, but reversed herself on March 29, 2001, after speaking to Dr. Joel Mascaro, a physician employed by NovaCare who

2

performed frequent employment physicals for Red Star. On April 25, 2001, a second neurologist sought out by Taylor, Dr. David Roby, diagnosed Taylor as likely to remain seizure-free and able to return to gainful employment (though not to driving a truck). On May 7, 2001, Taylor's family physician, Dr. Jay Glickman, also informed Red Star that Taylor should remain seizure-free, but could not drive a truck until he remained so for a year. On March 12, 2002, Taylor sent Red Star a February 6, 2002, letter from Dr. Glickman stating the same, as well as a February 6, 2002, letter from a medical examiner releasing Taylor to drive a commercial vehicle. On May 2, 2002, a NovaCare physician's assistant examined Taylor at Red Star's request and issued a medical examiner's certificate releasing Taylor to drive a commercial vehicle, but was reversed by Dr. Mascaro on May 6, 2002.

On July 2, 2002, Dr. Roby responded to a request for clarification by Dr. Mascaro with a letter stating it was "possible" Taylor could return to work in some capacity in which seizures were not an issue. Later that month, Taylor sought an evaluation from another physician, Dr. Hillard Sharf, who wrote a letter to an EEOC investigator stating he saw no problem in Taylor's driving a forklift or truck. Dr. Roby, Dr. Sharf, and Dr. Gordon Manin (Dr. Mascaro's successor at NovaCare) agreed that Taylor should be evaluated at Thomas Jefferson Epilepsy Center. On October 3, 2002, a neurologist there, Dr. Michael Sperling, evaluated Taylor and concluded he was not at any substantially greater risk of seizures than other members of the general public, and that no restrictions should be placed on his work activities. Red Star allowed Taylor to return to work on

3

October 18, 2002.  During the eighteen months in which he had not been cleared to work by Red Star, Taylor filed a grievance with his union's Joint Area Committee on April 2, 2001 (denied on May 8, 2001), as well as a discrimination charge against Red Star with the EEOC on May 16, 2001.  Red Star contends Taylor gave Saylor materials on reasonable accommodations for epileptics prepared by the Epilepsy Foundation, and falsely claimed to the EEOC that he had epilepsy.  Taylor also found interim employment driving a forklift elsewhere for several months.

Taylor sued Red Star on April 8, 2003, alleging Red Star had discriminated against him in violation of the ADA because it regarded him as disabled.  Red Star responded that it had refused to allow Taylor to work not because it regarded him as disabled, but because doctors had not cleared him to return to work.  Both Red Star and Taylor filed motions for summary judgment that the District Court denied.  The case was tried to a jury, which found Taylor proved by a preponderance of the evidence that Red Star regarded him as disabled, that he was qualified to perform the essential functions of his job with or without accommodation, and that he had been discriminated against by Red Star because it regarded him as disabled.  The jury also found Red Star had failed to prove by a preponderance of the evidence that Taylor had misinformed Red Star about his medical condition.  It awarded Taylor a total of $158,796.34 in back pay, lost pension benefits, and compensatory damages.  The District Court entered a final judgment in Taylor's favor on October 13, 2004.  On October 26, 2004, Taylor's counsel filed a motion for $367,388.15 in attorney's fees under the ADA.  The next day, Red Star moved

4

for judgment as a matter of law or, in the alternative, a new trial, contending there had been errors in the jury charge.  On March 9, 2005, the District Court denied Red Star's post-judgment motion and granted Taylor's counsel's motion for attorney's fees in part.  It later also granted Taylor's counsel's supplemental motion for attorney's fees on June 8, 2005, so that Taylor was awarded a total of roughly $290,000 in attorney's fees.

## II.  Red Star's Motion for Judgment as a Matter of Law or a New Trial

Red Star appeals the District Court's entry of final judgment, as well as its denial of a motion for a new trial on the basis of prejudicial errors in the jury charge.  We review the denial of a new trial motion for abuse of discretion.  *Honeywell, Inc. v. Am. Standards Testing Bureau, Inc.*, 851 F.2d 652, 655 (3d Cir. 1988).  Where, as here, a party properly objects to a jury instruction under Fed. R. Civ. P. 51, we exercise plenary review to determine whether the instruction misstated the applicable law.  *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005).  We generally review jury instructions for abuse of discretion to determine whether they are misleading or inadequate.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 929 (3d Cir. 1997).

The District Court instructed the jury: "you need not decide whether USF-Red Star prevented Mr. Taylor from returning to work because of his medical condition.  There is no dispute as to this fact." (J.A. 1412.)  Red Star contends this instruction was plainly false, gravely prejudiced Red Star's defense that it refused to allow Taylor to return to work because no physician had cleared him to drive a forklift (rather than because of his medical condition), and bolstered Taylor's case and credibility.  In denying Red Star's

5

objection to the instruction, the District Court noted: "Well, it's really a sequence of things, isn't it?  Because of [Taylor's] seizures, the doctors gave certain opinions, et cetera, but it was basically because he had seizures that he was precluded from going to work. . . .  [F]undamentally, initially, it was because he had seizures that he was sent home."  (J.A. 1252–54.)  Moreover, Saylor testified that, on initially sending Taylor home, he told him:

> [D]riving a forklift seems to me places yourself and some other employees in just as much danger as driving a truck might . . . .  [U]ntil we get further information from your treating physician with them telling us it's a good idea for you to be doing this or medically possible for you to be doing this . . . we [will] not be calling [you] for work.

(J.A. 823.)  We conclude the District Court did not abuse its discretion in instructing the jury as it did, and that the instruction was not misleading or inadequate.[1]

The District Court also instructed the jury on the meaning of "major life activity" under the ADA:

---

[1] The recent Eighth Circuit decision cited by Red Star's counsel in his November 14, 2006, letter to the Court is distinguishable.  The defendant employer in *Pittari v. American Eagle Airlines, Inc.*, Nos. 05-4181 & 06-2287, 2006 WL 3230089 (8th Cir. Nov. 9, 2006), placed narrow, temporary restrictions on the plaintiff employee's work only *after* receiving a medical diagnosis (with which the employee initially agreed) that the employee's cognitive faculties might impair his ability to perform certain safety-sensitive duties.  Here, by contrast, there was evidence Red Star (through Saylor) discovered Taylor had suffered seizures and then *sua sponte* prevented him from working at all *until* a medical diagnosis could clear him to do so.  Moreover, the Eighth Circuit held that, because the employee had only presented evidence showing he was disqualified from a narrow range of jobs, as opposed to the major life activity of working, the employer was entitled to summary judgment on the employee's ADA claim.  *Id.* at *6.  Here, by contrast, there was evidence Red Star saw Taylor as disqualified from a broad range of work, and the jury found Red Star regarded him as disabled.

6

> [T]he phrase "major life activity" means an activity that an average person can perform with little or no difficulty. Examples are caring for oneself, walking, breathing, seeing, hearing, and working. Mr. Taylor claims that USF-Red Star perceived him as having epilepsy or a seizure disorder, which substantially limited his major life activities of walking, breathing, caring for himself, remaining conscious and/or working and that it so classified him without a factual foundation.
>
> Now merely driving a forklift or truck is not a major life activity. To find that USF-Red Star regarded Mr. Taylor as having an impairment, which substantially limited [his] major life activity of working, plaintiff must prove that USF-Red Star believed that Mr. Taylor had an impairment which restricted his ability to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person, having comparable training, skills and abilities. The inability to perform one type of job, a specialized job, or a particular job of one's choice, does not necessarily mean that one is substantially limited in the major life activity of working.

(J.A. 1416–17.) Quoting only the first sentence of this instruction, Red Star contends it was "'legally erroneous'" and "plainly did not 'fairly and adequately' submit the issues to the jury." (Red Star Br. 29.) Both at trial and in its brief, Red Star contended the District Court should have instructed the jury that a "major life activity" is an activity "of central importance to daily life" (Red Star Br. 28–29; J.A. 1269–70), relying on *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002).

*Toyota* dealt with the "major life activity of performing manual tasks," which it found "different" from the major life activity of working. 534 U.S. at 200. In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999), the Court assumed without deciding that working was a major life activity under the ADA, and found that a showing of being "substantially limited" in the major life activity of working under the ADA "requires, at a

7

minimum, that plaintiffs allege they are unable to work in a broad class of jobs." It noted this was consistent with ADA regulations promulgated by the EEOC, which state:

> With respect to the major life activity of working . . . [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3) (2005). As the District Court noted in its order denying Red Star's new trial motion, this Court has also followed *Sutton* in applying the "class" approach to the major life activity of working. *See Edwin Taylor v. USF-Red Star Express, Inc.*, No. 03-2216, at 6 (E.D. Pa. Mar. 8, 2005) (citing *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 517 (3d Cir. 2001)). And in *Toyota*, the Court cited both *Sutton* and the EEOC regulations in noting the "class" approach still applied to determining whether an individual was substantially limited in the major life activity of working, though not the major life activity of performing manual tasks. 534 U.S. at 200. We conclude there was no error in the District Court's instruction on the meaning of "major life activity," which was consistent with *Toyota*, *Sutton*, our precedent, and the EEOC regulations.

Red Star also appeals the District Court's denial of its motion for judgment as a matter of law, on grounds Taylor presented no evidence for any reasonable juror to find that Red Star regarded Taylor as "disabled," and that, even if a reasonable juror could have found Red Star regarded Taylor as disabled, a plaintiff cannot recover on a

8

"regarded as" disability theory when he unreasonably fails to correct the defendant's mistaken perception of his impairment. We will affirm the denial of a motion for judgment as a matter of law "unless the record is 'critically deficient of that minimum quantity of evidence from which the jury might reasonably afford relief,'" and regard the evidence in the light most favorable to the non-moving party. *Honeywell*, 851 F.2d at 654–55 (quoting *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921 (3d Cir. 1986)).

Red Star contends no reasonable jury could have found Red Star regarded Taylor as "disabled," because Taylor presented no evidence regarding Red Star's perception of the frequency or severity of the seizures Taylor suffered, and no evidence Red Star believed Taylor's seizures prevented him from doing anything other than driving a truck or forklift. In fact, the trial record contains evidence Red Star believed Taylor was "seizure prone" so that he "might have another seizure and be a danger to the public" (J.A. 883), and that "no matter what he was doing [he] could be a threat to himself [and] others" (J.A. 332). An email discussing Red Star's possible response to complaints by Taylor's union also reflects this perception:

> We need to disclaim Local 107's claim that we have enough "floor" work to have kept Mr. Taylor supplied with work. This is a [sic] simply untrue. You can't work our dock in [Philadelphia] or anywhere without the need to operate a forklift being prevalent through 75 to 90 percent of your time.
> . . . Since just walking a dock requires careful awareness of everything around you, suppose a seizure would occur and the afflicted person falls into the path of a forklift. The person risks serious injury or death. Suppose the seizure prone person is walking into a trailer or is near

9

the edge of the dock for other reasons. Suppose a seizure occurs and the person falls from the dock to the pavement . . . below?

(J.A. 1669.)[2]  Viewing the evidence in the light most favorable to Taylor, we conclude a jury could reasonably have found Red Star regarded him as "disabled," and accordingly that the District Court did not err in denying Red Star's motion for judgment as a matter of law on that ground.

Red Star contends that even if a reasonable jury could have found Red Star regarded Taylor as disabled, it is entitled to judgment as a matter of law because Taylor caused and fostered any mistaken impression that Red Star had concerning his condition. In *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3d Cir. 1999), we found an employer could be held liable for regarding an employee as disabled even when that perception was mistaken, but that a "reasonable mistake" defense was sometimes available when the employee was responsible for the mistaken perception. Specifically, we stated:

> If an employer regards a plaintiff as disabled based on a mistake in an individualized determination of the employee's *actual condition rather than on a belief about the effects of the kind of impairment* the employer regarded the employee as having, then the employer will have a defense if the employee unreasonably failed to inform the employer of the actual situation.

---

[2] As the District Court noted, Red Star's own motion for judgment as a matter of law stated Taylor had suffered seizures that prevented him from walking or talking. *Edwin Taylor v. USF-Red Star Express, Inc.*, No. 03-2216, at 6 (E.D. Pa. Mar. 8, 2005) (order denying Red Star's motion for judgment as a matter of law or, in the alternative, a new trial). The motion also stated if Taylor suffered another seizure "while working on the dock" he could fall into the path of another forklift. Mem. of Law in Supp. of Def.'s Post-Trial Mot. for J. as a Matter of Law or, in the Alternative, for a New Trial at 21, *Taylor*, No. 03-2216 (E.D. Pa. Oct. 27, 2004).

*Id.* at 193 (emphasis added).  Red Star contends it made decisions based on an individualized determination of Taylor's condition, and that Taylor knowingly misled Red Star into regarding him as having epilepsy.[3]

But there was evidence Red Star's perception that Taylor had a serious epileptic condition preventing him from working in any capacity on Red Star's dock was not based on information from Taylor, but on the assessments of doctors reporting to Red Star.  For example, Dr. Mascaro testified he was concerned at least as early as March 26, 2001, that Taylor was unable to operate a motor vehicle due to a seizure disorder, and, upon seeing Dr. Scardigli's late March 2001 opinion that Taylor was capable of operating a forklift, that he called Dr. Scardigli "about the potential danger of someone with epilepsy operating a motorized vehicle."  (J.A. 481–82.)

As the District Court noted in denying Red Star's motion for judgment as a matter of law, "[t]here was conflicting evidence on this issue, and the Jury clearly resolved it in favor of [Taylor].  In keeping with Supreme Court precedent, this Court is obligated to respect the Jury's conclusion."  *Taylor*, No. 03-2216, at 7 (E.D. Pa. Mar. 8, 2005) (order denying Red Star's post-trial motions) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).  Viewing the evidence in the light most favorable to

---

[3] Specifically, Red Star contends Taylor: told Saylor he had been diagnosed with infantile epilepsy and provided Red Star with literature on accommodations for epilepsy; signed an EEOC discrimination charge in which he falsely stated he had been diagnosed with epilepsy and Red Star had discriminated against him for that reason; wrote a letter to Red Star requesting accommodation for epilepsy on May 17, 2001; and testified he never believed he had epilepsy.  (Red Star Br. 8, 38.)

Taylor, we conclude a jury could reasonably have found Red Star's perception of Taylor as disabled was not a result of Taylor's unreasonably failing to inform Red Star of his condition, and accordingly that the District Court did not err in denying Red Star's motion for judgment as a matter of law on that ground.

### III. The District Court's Awards of Attorney's Fees

The District Court awarded Taylor's counsel a total of roughly $290,000 in attorney's fees under the ADA, 42 U.S.C. § 12205, for approximately 1242 hours of work (roughly $246,000 in response to the initial motion for attorney's fees and roughly $44,000 in response to his supplemental motion for attorney's fees). In making the awards, the court noted "[t]he underlying litigation was extremely hard-fought and contentious, mostly due to [Red Star's] apparent strategy of fighting [Taylor] at every turn, through the extensive pre-trial motions practice to post-trial motions." *Taylor*, No. 03-2216, at 1 (E.D. Pa. Mar. 8, 2005) (order granting in part Taylor's initial motion for attorney's fees). Red Star appeals both the District Court's initial and supplemental awards of attorney's fees, while Taylor's counsel appeals the District Court's reduction of the initial award. We will affirm both awards.

A. Procedural History

The initial motion for attorney's fees sought roughly $367,000. Red Star responded to the motion, contending the fee request was excessive and that the District Court should reduce any fee award to a figure below $100,000. Red Star listed several "specific objections" to the hours for which Taylor sought compensation, contending they

12

were excessive and unnecessary: it contended 241.7 hours supposedly expended on preparation of Taylor's ultimately unsuccessful summary judgment motion were excessive in a single-plaintiff case given counsel's expertise; and it contended 59 hours supposedly expended on preparation of jury instructions were excessive given the time that had already been expended in the case.

In its initial fee award of March 8, 2005, the District Court made three reductions to the hours presented in Taylor's initial motion for attorney's fees (3.5 hours for record-keeping irregularities and 44 hours of a senior attorney's trial time, because his presence had been unnecessary and redundant). It also provisionally withheld fees for the hours Taylor contended had been spent preparing his summary judgment motion and jury instructions. As to the 241.7 summary judgment motion hours, the District Court stated: "the amount of time billed for [the motion] is simply astounding (particularly in light of its ultimate failure) and therefore not completely reasonable." *Taylor*, No. 03-2216, at 9–10 (E.D. Pa. Mar. 8, 2005) (order granting in part Taylor's initial motion for attorney's fees). As to the 59 jury instruction hours, it stated: "this smacks of excessiveness." *Id.* at 11. For both figures, however, the court stated it could not "unilaterally, and without sufficient evidence, dictate the number of hours that would have been reasonable." *Id.* at 10. It stated Red Star had "submitted no contrary information, criticizing counsel's utilization of time as broadly unreasonable, excessive, and redundant," and directed Red Star (and allowed Taylor) to submit additional evidence as to the hours that *would* have been reasonable. *Id.* at 4, 10–11. If Red Star failed to submit such evidence, the court

13

stated, it would consider Red Star to have constructively waived its objections to the summary judgment and jury instruction hours.

But Red Star declined to provide the evidence requested by the District Court. In a March 22, 2005, supplemental brief, it contended the initial attorney's fees order had found Taylor had failed to show that the hours he claimed were expended on his summary judgment motion and jury instructions were reasonable. In directing Red Star to submit evidence on reasonableness, Red Star contended, the District Court had improperly shifted the burden of showing reasonableness from the fee applicant to the adverse party. It contended the specific objections in its November 9, 2004, response were sufficient to allow the District Court to reduce the hours for which Taylor's counsel were entitled to fees. Taylor's counsel, meanwhile, filed a supplemental affidavit on March 22, 2005, stating the hours expended in preparing the summary judgment motion and jury instructions were reasonable.

In an order of April 26, 2005, the District Court awarded Taylor attorney's fees for the 59 hours spent by his counsel preparing jury instructions (finding Taylor's attorney's contention in her supplemental affidavit that this amounted only to a week of time persuasive), but reduced the hours spent on the summary judgment motion for which it awarded fees from 241.7 to 41.32 (awarding fees only for the hours expended on the summary judgment brief's factual statement, because Taylor's bills were otherwise insufficiently detailed to separate time spent on individual arguments within the brief). In response to Red Star's brief, the court characterized its earlier order as not concluding

14

that the hours submitted by Taylor for preparation of the summary judgment motion and jury instructions *were* unreasonable, but merely suspecting that they *might be* unreasonable. It stated it had invited Red Star to submit evidence "to lend credence to [Red Star's] opinion, and the Court's suspicion, that certain of [Taylor's] hours were excessive and redundant." *Taylor*, No. 03-2216, at 1 (E.D. Pa. Apr. 26, 2005) (order directing Red Star to remit fees to Taylor). The court stated it had not shifted the burden of proof from Taylor to Red Star:

> Quite the contrary, the Court suggested that the amount of hours spent on Plaintiff's Motion for Summary Judgment, and on Plaintiff's jury instructions, *may* have been unreasonable, and that the Court could not unilaterally ascribe an amount of hours that would have been reasonable given the record before it at that time. Although it may, in hindsight, have been appropriate to require, rather than suggest, that Plaintiff submit additional authority in order to prevail, Plaintiff has submitted exactly the kind of authority that the Court contemplated, rendering Defendant's concern moot.

*Id.* at 1 n.1. But the District Court's decision not to reduce the jury instruction hours seemingly relied in part on Red Star's failure to submit any evidence in response to the court's earlier order. *See id.* at 3 ("This conclusion is bolstered by Defense Counsel's unwillingness to submit any evidence supporting their contention that Plaintiff's Counsel spent an unreasonable amount of time preparing their jury charge.").

On April 20, 2005, while his initial motion for attorney's fees was still pending, Taylor's counsel filed a supplemental motion for attorney's fees, seeking $43,591.50 for 149.2 hours spent on post-trial motions and preparation of the initial motion for attorney's fees. On May 20, 2005, Red Star responded to Taylor's motion, contending it was both

15

untimely under Fed. R. Civ. P. 54(d)(2)(B) (because filed more than fourteen days after any entry of judgment) and unreasonable. On May 26, 2005, Taylor's counsel contended the supplemental motion was not untimely, because they had reasonably waited until they had finished responding to Red Star's oppositional responses to the initial motion for attorney's fees before filing it. On June 8, 2005, the District Court granted Taylor's supplemental motion for fees, rejecting Red Star's timeliness argument:

> [Red Star's] objections to the timeliness of [Taylor's] submission are groundless, given the completely logical timetable in which [Taylor's counsel] submitted their fee requests. How could [Taylor's counsel] submit a bill for the time spent preparing his fee petition before [they] completed its preparation and found out that it had been granted? [Red Star's] suggestion that this would somehow be appropriate does not comport with common sense. Although the Court may not have literally ordered the briefing schedule for the fees litigation, the Court is quite comfortable with the notion that such a briefing schedule was implied.

*Taylor*, No. 03-2216, at 1 (E.D. Pa. June 8, 2005).

B.  Discussion

We review the reasonableness of an award of attorney's fees for abuse of discretion. *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990). We can find an abuse of discretion if no reasonable person would adopt the District Court's view. *Silberman v. Bogle*, 683 F.2d 62, 65 (3d Cir. 1982). Whether the District Court applied the proper standards or procedures is a question of law subject to plenary review. *Rode*, 892 F.2d at 1182.

Red Star contends the District Court erred as a matter of law in directing Red Star to submit evidence on the number of hours that would have been reasonable for Taylor's

16

counsel to expend in preparing the summary judgment motion and jury instructions, after it had already found that Taylor's counsel had failed to prove the hours were reasonable. Our precedent on the calculation of an award of attorney's fees and appellate review is well settled: the party seeking attorney's fees has the ultimate burden to prove that the hours for which it seeks fees were reasonably expended, and hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. First, the petitioner must meet an initial burden by "'submit[ting] evidence supporting the hours worked and rates claimed.'" *Id.* at 1183 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Id.* (citing *Bell v. Utd. Princeton Props., Inc.*, 884 F.2d 713 (3d Cir. 1989)). Once the adverse party raises sufficiently specific objections to the fee request, a district court "has a great deal of discretion to adjust the fee award in light of those objections." *Id.* at 1183 (citing *Bell*, 884 F.2d at 721). But a district court may not make *sua sponte* reductions to fee requests based on material facts not raised at all by the adverse party, because that would deprive the fee petitioner of notice of the need to offer evidence of reasonableness and because statutory fee litigation is adversarial. *Bell*, 884 F.2d at 720, 719; *United States v. Eleven Vehicles*, 200 F.3d 203, 212 (3d Cir. 2000). In *Bell*, we stated "that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive," but must identify both

17

the general type of work being challenged and the specific grounds for contending that the hours were unreasonable. 884 F.2d at 720.

The District Court's language in the present case suggests that it did not believe Taylor's counsel had met their initial burden of showing the hours spent on his summary judgment motion and jury instructions were reasonable. So, it may have committed an error of law in continuing to consider awarding fees to Taylor for hours that had not been shown to be reasonable. It also appears that the objections to the summary judgment and jury instructions hours made by Red Star were sufficiently specific to allow the District Court to reduce those hours, as they met *Bell*'s two requirements and appeared sufficient to put Taylor on notice. Accordingly, it may have been legal error for the District Court to ask Red Star to submit additional information on those hours on the "suspicion" they were unreasonable.[4]

But even assuming *arguendo* that the District Court erred as a matter of law in applying the wrong standard to determine whether the hours submitted by Taylor for preparation of his summary judgment motion and jury instructions were reasonable, we conclude the error was harmless. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005) ("An error will be deemed harmless only if it is 'highly probable' that the error did

---

[4] *Cf. Loughner v. University of Pittsburgh*, 260 F.3d 173, 179 (3d Cir. 2001) (finding error in district court's failure to consider defendants' substantive objections to plaintiff's fee petition in determining the reasonableness of hours and subsequent acceptance as reasonable of all the hours submitted by plaintiff "based on Defendants' failure to even attempt to estimate the number of hours and costs expended in defending this action").

18

not affect the outcome of the case." ).[5]  As our precedents indicate, district courts have a great deal of discretion in making attorney's fee awards once the petitioner has satisfied the initial reasonableness burden and the adverse party has presented objections.  And here the District Court did not rely on Red Star's failure to present further objections and award Taylor the full amount of fees he sought, but rather reduced the hours expended on summary judgment and jury instructions for which it awarded fees, from 300.7 to 100.32. It is highly probable that the same outcome would have resulted had the District Court simply ruled that Red Star's objections had put Taylor on notice of the need to defend the reasonableness of the hours in question.  *See Taylor*, No. 03-2216, at 1 n.1 (E.D. Pa. Apr. 26, 2005) (order directing Red Star to remit fees to Taylor) ("Although it may, in hindsight, have been appropriate to require, rather than suggest, that Plaintiff submit additional authority in order to prevail, Plaintiff has submitted exactly the kind of authority that the Court contemplated, rendering Defendant's concern moot.").  We conclude any legal error was harmless.

Red Star contends the District Court erred as a matter of law in granting Taylor's supplemental motion for attorney's fees, because it was filed more than fourteen days

---

[5] We have previously applied the "harmless error" rule to awards of attorney's fees. *See, e.g.*, *Pa. Envtl. Def. Found. v. Cannon-McMillan Sch. Dist.*, 152 F.3d 228, 234–35 (3d Cir. 1998); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260–61 (3d Cir. 1995); *Davis v. S.E. Pa. Transp. Auth.*, 924 F.2d 51, 55–56 (3d Cir. 1991); *Francois v. Francois*, 599 F.2d 1286, 1296 (3d Cir. 1979).

after any final judgment, in contravention of Fed. R. Civ. P. 54(d)(2)(B).[6] The 1993 Amendments to that rule stated: "What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees . . . ." Notice is a greater concern in initial motions for attorney's fees than it is in supplemental motions, and courts considering the timeliness of supplemental motions have allowed those motions to be filed as long as their timing was reasonable. *See, e.g.*, *Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*, 31 F. Supp. 2d 866, 868 (D. Or. 1998) (finding plaintiff's motion for supplemental attorney's fees was timely, despite being filed more than fourteen days after the entry of judgment, because it was "filed within a reasonable time after the amount of fees incurred was known"); *Parker v. Califano*, 443 F. Supp. 789, 792 (D.D.C. 1978) ("[C]ounsel's decision not to file any supplemental fees motions until the case was completed in its entirety was perfectly reasonable."); *see also Bernback v. Greco*, No. 98-0230, 2005 WL 1563503, at *1 (M.D. Pa. June 30, 2005) (granting plaintiff leave to file a supplemental motion for post-judgment fees and negating defendant's contention that the supplemental motion was untimely).[7] We conclude the District Court did not err as a matter of law in granting

---

[6] Fed. R. Civ. P. 54 is not jurisdictional. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).

[7] In contrast, courts in this Circuit have denied *initial* motions for attorney's fees filed more than fourteen days after the entry of judgment. *See, e.g.*, *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 642 n.12 (3d Cir. 1996) (noting, in upholding denial of initial motion for attorney's fees, that it "was not timely under Fed R. Civ. P. 54(d)(2)(B) because it was not filed and served within 14 days after entry of judgment"); *Berwyn*

Taylor's supplemental motion for attorney's fees because its timing was logical, despite the fact that it was filed more than fourteen days after any entry of judgment.

Both Red Star and Taylor contend the District Court abused its discretion in its awards of attorney's fees.[8] Red Star contends the District Court abused its discretion by failing to eliminate unnecessary and duplicative hours from Taylor's initial motion for fees and his supplemental motion for fees. And Taylor contends the District Court abused its discretion in reducing the hours expended on preparing Taylor's summary judgment motion for which it awarded fees from 241.7 to 41.32. In awarding fees, a district court "must make an adequate record upon which we can review its decisions." *Rode*, 892 F.2d at 1187. Here, the District Court based its fee awards on extensive billing records and exhibits, sought additional briefing to determine the reasonableness of certain

---

*Capital Invs., Inc. v. Shore Venture Group, LLC*, No. 01-0691, 2006 WL 2045700, at *1 (E.D. Pa. July 18, 2006) (finding plaintiff's initial motion for attorney's fees untimely because filed more than fourteen days after the entry of judgment, and noting that, "[w]hile it is probable that this court would have discretion to grant even an untimely motion for counsel fees, the circumstances of this case do not warrant such an exercise of discretion").

[8] The District Court awarded Taylor roughly $290,000 in attorney's fees, while his total recovery was roughly $158,000. But, as the District Court noted, this litigation has been quite contentious and time-consuming. And we have expressed "serious concerns with the practice of limiting an award of attorney's fees to maintain proportionality between the fees and the amount of damages awarded." *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1039 (3d Cir. 1996) (citing *N.E. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474–75 (3d Cir. 1989); *Cunningham v. City of McKeesport*, 807 F.2d 49, 52–54 (3d Cir. 1986)).

hours, and cogently explained its reasoning in making reductions.  We find the District Court did not abuse its discretion in making its awards of attorney's fees.

## IV.

We will affirm the District Court's entry of final judgment, its denial of the post-judgment motion, and its attorney's fees awards.